**P. B. MUTRIE MOTOR TRANSPORTATION, INC., Defendant, Appellant,**

v.

**INTERCHEMICAL CORPORATION, Plaintiff, Appellee.**

No. 6850.

United States Court of Appeals
First Circuit.

June 13, 1967.

Charles W. O'Brien, Boston, Mass., for appellant.

Laurence M. Johnson, Boston, Mass., with whom Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant common carrier made a delivery of liquid latex to plaintiff's manufacturing plant by the "forced air pressure" method, which involved forcing the liquid by air pressure from defendant's tank truck through a rubber hose into piping connected to the bottom of a storage tank on the second floor of plaintiff's building. At the end of the delivery liquid latex in a foamy condition overflowed from a manhole in the top of the tank, causing damage to plaintiff's property, chiefly to some 50,000 yards of sheeting fabric.

Plaintiff alleged that the forced air method created the reasonably foreseeable risk of air being blown into the tank and causing the latex to expand and overflow, and that defendant negligently failed to guard against that risk. Appealing from a verdict for plaintiff in the amount of $9,172.50, defendant charges error in the denial of its motion for directed verdict, in the admission of certain evidence of other similar occurrences, and in the refusal to give a requested instruction on damages.

The jury could have found the following facts. While defendant had delivered latex to plaintiff's plant a number of times, this was the first time that a forced air delivery had been made to it. The defendant's driver was told that the inlet to the storage tank was at the bottom, but at no time did he enter the building to view the receiving apparatus.

Plaintiff's storage tank had a 5,093 gallon capacity. Immediately preceding the delivery, it contained about 400 gallons, leaving room for roughly 4,700 gallons. The tank truck contained 4,000 gallons. Plaintiff's head mechanic checked the storage tank at intervals and, on the last examination, found that the liquid was 30 inches (or 600 gallons) from the top of the tank. At this point he asked defendant's driver how much more was in the truck tank. The driver replied, "According to my watch, I only have a little bit left." Shortly thereafter, the latex overflowed the storage tank, a worker inside the plant came rushing out with the information, and plaintiff's head mechanic, standing at the truck with defendant's driver, turned off the valve.

There was also evidence that within the previous year defendant had experienced overflows in storage tanks while making air pressure deliveries of other liquids, but had made no investigation and had issued no instructions or warnings in connection with using such a method of delivery. The jury could also have found that when air is in-

jected into liquid latex it will not pass quickly through it but will be contained within the liquid for a time by the pressure of the film on the surface, the result being an expansion of the volume of the latex. The continued blowing of air into the storage tank after the last of the latex had been delivered concededly could have produced the inflation, agitation, foaming, and overflow.

■ Granting that damage in this case could have been averted had the inlet to plaintiff's storage tank been at the top rather than at the bottom, allowing excess air to escape into the atmosphere, or had plaintiff's head mechanic remained at the storage tank near the end of the delivery, the jury was warranted in finding that the defendant alone knew or should have known of the peculiar risk attendant on the air pressure method. It was also warranted in finding that keeping track of the progress of delivery by looking at a watch was not the exercise of all reasonable precaution. Defendant concedes that the issue of plaintiff's contributory negligence was for the jury.

■ This case is not one where overflow was caused by deteriorated equipment of the plaintiff of which the defendant had no reason to know, as in Samuel v. White Fuel Corp., 332 Mass. 264, 124 N.E.2d 270 (1955), cited by plaintiff. Indeed, the court in that case specifically noted that there was no evidence that the method of delivery was improper. Here the jury could have found that the method used created an unusual risk of which the plaintiff was likely to be and was ignorant. Under such circumstances both the opportunity and the burden to take precautions rest on defendant. Carter v. Yardley & Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559 (1946). Defendant's motion for directed verdict was properly denied.

Over objection, the district judge admitted defendant's answers to plaintiff's interrogatory which sought details of other deliveries by defendant that had been accompanied by "similar" occurrences. The answers dealt with three deliveries, of synthetic resin, zinc acetate, and liquid alum respectively, all within one year of the events of this case. In each case the brief answer was to the effect that while the driver was at his truck (and in two of the instances while watching the air pressure gauge), he either saw the product flowing out of the consignee's window or was informed of an overflow.

The district court in admitting these answers confined them to the question whether defendant was put on notice of the risk involved in making air pressure deliveries. Defendant contends that the answers were inadmissible because of the difference in materials and the absence of proof that the other receiving lines and tanks were similar to the plaintiff's here. As to the latter point, the evidence as to each of the other three deliveries indicates overflow and blowing of air through the top of a storage tank. There is no suggestion of significant differences in receiving equipment. Nor can we say that the difference among the liquids involved indicates that the district court abused its discretion in admitting this evidence. The very fact that four different kinds of liquid chemicals suffered the same fate when being delivered by an air pressure method justifies, if it does not compel, the conclusion that the significant point of similarity lay in the method.

■ Defendant's sole authority for exclusion is Robitaille v. Netoco Community Theatre, 305 Mass. 265, 25 N.E.2d 749, 128 A.L.R. 592 (1940), which holds that proof of prior accidents is inadmissible where there is no showing of substantial identity of circumstances. But "substantial identity" does not mean absolute identity. It is sufficient if the proponent can show identity of the relevant circumstances. We think this case lies within the scope of the reservation that "where substantial identity in the circumstances appears, and the danger of unfairness, confusion or undue expenditure of time in the trial of collateral issues reasonably seems small to the trial judge, he has generally been

left free to admit such evidence in his discretion." 305 Mass. at 268, 25 N.E. 2d at 750. Moreover, if, as the court in *Robitaille* observed, "The recent behavior of machinery in operation may be received to show its condition," *ibid.*, it would seem to follow, *a fortiori,* that the recent behavior of a process or method could be received to show, not the cause of the accident, but simply the defendant's awareness that the use of a method involves a risk that what happened before may happen again. Elwell v. Del Torchio, 349 Mass. 766, 208 N.E.2d 221 (1965). See Denton v. Park Hotel, Inc., 343 Mass. 524, 180 N.E.2d 70 (1962).[1] This is not to say that the evidence of prior mishaps would have been admissible here if there had been evidence of subsequent changes in precautions or method; but, lacking such evidence, the district court clearly acted within its discretion.

Allied to defendant's objection to evidence of prior deliveries was its objection to the admission of a report from one of its sales representatives to one of its regional managers, setting forth in some detail the complaint of a customer relating to one of those deliveries resulting in overflow. If inadmissible, it was prejudicial because of the impact it might well have on a jury.[2]

■ This was objected to as not being a record kept in the usual course of defendant's business, as being hearsay evidence from an absent witness, and as dealing with collateral matters. The district judge admitted the document solely on the issue of notice to defendant of the risks of the air pressure method, with a warning that it was not to be considered as proof of the truth of the matters reported. Neither the rule against hearsay evidence nor any exception to the rule is involved here and the awareness on the part of the defendant of risks attendant to the use of air pressure was, as we have noted, an important issue. To use the words of Judge Goodrich, "We do not find reversible error in this method of bringing home notice to the defendant." Kieffer v. Blue Seal Chem. Co., 196 F.2d 614, 615 (3d Cir. 1952).

■ Defendant's final argument is that the court erred in refusing to charge the jury that plaintiff was bound by testimony of its plant superintendent that immediately after the accident the damaged fabric had a value of $5,000. The ground put forth to support this argument is plainly incorrect. The value of the fabric was not a matter peculiar to the superintendent's knowledge or state of mind. At most it was a matter of objective fact; at least, a matter of opinion. In either event it was for the jury alone to decide what weight the evidence should be given. And even were that not the case, a fair reading of the testimony reveals that the only way in which plaintiff could salvage such a value from the damaged fabric was to use it in a filtering process over a period of from two to four years. In fact this process was discontinued shortly after the accident. The availability of this use could be relevant only on a theory that plaintiff had a duty to take reasonable steps to minimize its damages. We cannot say that it would be at all reasonable to persist in using a manufacturing process solely to salvage some use from material that has been rendered unfit for the purpose for which it was acquired.

Affirmed.

1. See also De Eugenio v. Allis-Chalmers Mfg. Co., 210 F.2d 409 (3d Cir. 1954); Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 180 F.2d 13 (1950).

2. For example, after describing the extent of the overflow, the report stated: "They seem to feel here that we kept pumping air and building pressure for some time after we actually were unloaded, and this great pressure agitated and foamed product more and spilled over till [sic] pressure expended itself. They seem to think we do not know when we are empty, and indicate by statements that our man did not seem to know either."