James A. McKINNON, Plaintiff, Appellant,

v.

SKIL CORPORATION, Defendant, Appellee.

No. 80–1298.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1980.

Decided Jan. 14, 1981.

Rehearing Denied March 20, 1981.

Edmund M. Pitts, Boston, Mass., with whom Pitts & Pitts, Boston, Mass., was on brief, for appellant.

David A. Barry, Boston, Mass., with whom Kenneth L. Carson, Regina Roman, and Sugarman, Rogers, Barshak & Cohen, Boston, Mass., were on brief, for appellee.

Before ALDRICH, PELL * and CAMPBELL, Circuit Judges.

PELL, Circuit Judge.

The appellant, James McKinnon, sued Skil Corporation on negligence and breach of warranty theories for injuries he incurred while operating a portable electric saw manufactured by the defendant. The jury returned a verdict for Skil on April 4, 1980. McKinnon alleges that the trial judge committed numerous prejudicial errors by giving misleading or erroneous instructions, refusing to give an instruction requested by the plaintiff, and by the exclusion from evidence of certain documents and testimony offered by the plaintiff. The appellant also contests the admission of other evidence offered by the defendant. Federal jurisdiction is based upon diversity of citizenship.

### I.

McKinnon is a professional floor re-finisher and installer. He purchased a new Model 559 Type 5 circular saw manufactured by the defendant on October 31, 1975. On each of the several occasions that he used the saw prior to the date of his accident, he observed that the lower blade guard was sticking so that it did not return to cover the blade at all or returned slowly. He knew that the blade guard should be kept in good working order and also knew he could return the saw to the retailer if there was any problem with it. He, however, decided against taking the latter course, and made no complaint about the saw either to the retailer or the defendant prior to the accident.

On January 16, 1976, McKinnon was using the saw to cut boards laid out on a workbench. After making a cut, and without looking to see whether the lower blade guard had returned to cover the blade, he set the saw down on the floor and it cut his right foot, partially amputating a toe and lacerating another toe. His teenage son testified that the saw was set down about two feet from his father's right foot, and that the saw traveled in a semi-circle when the lower blade guard did not return to the safe position, and the momentum of the saw carried it against his father's right foot. There was also testimony that the saw blade will continue to rotate approximately ten seconds after the release of the trigger.

McKinnon was taken to a hospital after the accident and according to the entries in

* Of the Seventh Circuit, sitting by designation.

the hospital record, he told the clerk in the emergency room and the doctor who treated him that he had dropped the saw on his foot. Several months after the accident the plaintiff returned to work on a full-time basis.

## II.

The plaintiff first contends that the trial judge's instructions regarding the implied warranty of merchantability gave rise to the inappropriate implication that McKinnon had misused the saw.[1] Because this objection is raised for the first time on appeal, Rule 51 of the Federal Rules of Civil Procedure precludes consideration of this issue. *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1132 (1st Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Morris v. Travisono*, 528 F.2d 856, 859 (1st Cir. 1976); *Nimrod v. Sylvester*, 369 F.2d 870, 872 (1st Cir. 1966).

The plaintiff's second objection to the trial judge's instructions contests the application of comparative negligence to the warranty claim. The judge instructed the jury that the plaintiff's negligence; if any, diminishes his right to recover on either negligence or warranty theories in proportion to his degree of fault unless he is found to be more than fifty percent negligent, in which case recovery is barred. The plaintiff contends that his objection on this ground was subsumed in his objection to the trial judge's failure to give the plaintiff's requested breach of warranty instruction, and therefore is not barred from review by Rule 51.

The plaintiff's objection to the trial judge's failure to give the requested instruction, however, concerned a different aspect of the warranty instruction, which will be discussed separately hereinafter. Even assuming it well-founded, *but cf. Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979), the plaintiff never made an objection on the ground alleged here. Rule 51 requires that the subject matter and ground for objection to jury instructions be stated distinctly. Under Rule 51, "[o]bjection to one part of the charge does not permit ... [a party] to assert error as to a different part; nor may objection on one ground serve as a predicate to a challenge on another." *Gillentine v. McKeand*, 426 F.2d 717, 723 n.19 (1st Cir. 1970).

Rule 51 promotes judicial economy and integrity by serving a dual purpose. Compliance with the Rule provides an opportunity for the trial judge to correct errors while it eases the burden on appellate courts by reducing the potential number of reviewable court rulings. *Harrington v. United States*, 504 F.2d 1306, 1316–17 (1st Cir. 1974); *Marshall v. Nugent*, 222 F.2d 604, 615 (1st Cir. 1955). Consequently the Rule bars review of objections not presented to the trial court in all but the most exceptional cases.[2]

The only objection to the jury instructions which was preserved for appeal contested the court's refusal to give a proposed instruction tendered by the plaintiff which related to the breach of warranty claim. The instruction directed that "[t]he Skil Corporation has a duty under the law to

---

**1.** The instruction elaborated upon the elements of the warranty of merchantability and concluded with the single sentence at issue here: "If, however, the quality of the saw was such when properly used that it would perform the job for which it was intended, then there was no breach of the warranty of merchantability." The plaintiff's complaint is that "[t]he jury might readily conclude from this [sentence] ... that if there was an improper use of the saw they must find for the defendant.... However, ... there was no evidence of unforeseeable misuse in this case and therefore, such an instruction was erroneous."

**2.** While the First Circuit recognizes that exceptions will be made to prevent patent miscarriages of justice in cases of plain error, *Roy v. Star Chopper Co., supra*, 584 F.2d at 1132, this is not an appropriate case for application of the plain error exception. The court in *Morris v. Travisono, supra*, 528 F.2d at 859, limited the exception to a narrow class of cases: "[W]e also endorse the view of Professors Wright and Miller to the effect that 'If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" (Citation omitted).

anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting." [3]

■ Where the foreseeability of the plaintiff's particular use of a product is in dispute, an explicit instruction on foreseeability of use is appropriate. This case, however, is unlike *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (Mass.1978), upon which the plaintiff relies. A crucial disputed issue in *Back* was whether the manufacturer had a duty to minimize risks inherent in vehicular collisions. The court reasoned that although an accident is not a normal or ordinary function of a vehicle, nonetheless it is foreseeable.

In the instant case, the judge advised the jury at length on the aspects of warranty law and concluded that "the law implies a warranty ... that the article which has been purchased is reasonably fit for the purposes, the ordinary purposes for which such goods are used." The instruction adequately covered the law as applied to the facts of this case. The evidence at trial established, and the defendant did not contest, that the plaintiff was a foreseeable user and that cutting wood flooring was a normal use.

A special instruction on the duty to design in light of all "anticipated" or "reasonably foreseeable" uses would be mere surplusage in a case where the trial judge had already instructed the jury on the manufacturer's duty to make a product fit for ordinary use and where there is no claim that the plaintiff's use was other than "normal," "ordinary," "proper," or "intended" by the manufacturer. Such an instruction, given after the conclusion of the charge as a whole, might have wrongly suggested to the jury that there was in fact some dispute as to whether the plaintiff's use of the saw

for cutting hardwood floors was ordinary, proper, or even reasonably foreseeable.[4]

■ Although all parties are entitled to adequate jury charges upon the controlling issues in the case, the court need not employ the precise language urged. *Wolff v. Puerto Rico*, 341 F.2d 945, 946 n.1 (1st Cir. 1965). As long as the judge's instruction properly apprises the jury of the applicable law, failure to give the exact instruction requested does not prejudice the objecting party. *Sears, Roebuck & Co. v. Penn Central Co.*, 420 F.2d 560, 564 (1st Cir. 1970). Because the foreseeability of the particular use was not a disputed issue in the instant case, the court's refusal to give the instruction was appropriate.

### III.

The plaintiff contests numerous trial court rulings excluding evidence. The plaintiff sought to admit into evidence an Occupational Safety and Health Act (OSHA) safety regulation requiring circular saws to have properly functioning lower blade guards.[5] This regulation was offered on the issue of Skil Corporation's negligence to show that the saw did not comply with minimum safety requirements.

■ Massachusetts permits, in the sound discretion of the trial court, the admission of safety standards for consumer products promulgated by government organizations to prove negligence in product liability cases. *Torre v. Harris-Seybold Co.*, —— Mass.App. ——, 404 N.E.2d 96, 105 (Mass. App.1980). However, the standards must meet the threshold evidentiary showings of trustworthiness, relevancy, materiality, and necessity. 404 N.E.2d at 106 n.10. The trial court is accorded considerable discretion in determinations relating to the ad-

---

3. The plaintiff admitted that the trial judge had sufficiently charged the jury on the manufacturer's duty to design the product in accordance with reasonably anticipated uses with respect to the negligence claim.

4. The trial judge rejected the tendered instruction because he believed that further instruct-

ing the jury at that point would confuse the jurors rather than clarify the issues.

5. The regulation, at 29 C.F.R. § 1910.243 (1979), reads, in pertinent part, "When the tool is withdrawn from the work, the lower guard shall automatically and instantly return to covering position."

missibility of evidence. *Gilliam v. Omaha*, 524 F.2d 1013, 1016 n.4 (8th Cir. 1975). In this case, the trial court did not abuse its discretion in refusing to admit the OSHA regulation when it ruled that OSHA workplace standards were not relevant in this consumer product liability action against a manufacturer.[6]

The plaintiff contends that OSHA standards are relevant as evidence of whether or not the defendant acted as would a reasonably prudent person under these circumstances. He contends that the regulation provides evidence of industry practice and standard of care.

■ The employment and consumer contexts are not that fungible. OSHA was enacted to assure safety in the workplace, 29 U.S.C. § 651(b), and therefore its terms apply only to employers. *Id.* at § 654. OSHA safety regulations are promulgated to ensure workplace, not consumer, safety. The law may not always require the same standard of care in the consumer context as it does in the employment context because each situation gives rise to its own peculiar set of problems.[7]

While *compliance* with OSHA safety regulations is judged by a "reasonably prudent man familiar with the circumstances of the industry" test, *Cape and Vineyard Div. of New Bedford Gas v. OSHRC*, 512 F.2d 1148, 1152 (1st Cir. 1975), "OSHA is not precluded from promulgating, after notice and comment, new and specific regulations requiring safety precautions beyond those considered reasonable in the industry." *American Airlines, Inc. v. Secretary of Labor*, 578 F.2d 38, 41 (2d Cir. 1978). An OSHA safety regulation, therefore, may impose a standard of conduct upon employers greater than that which would be considered reasonable in the industry. This comports with the intent of the Act. "The purpose of the Act is to require all employers to take *all* feasible steps to avoid industrial accidents." *General Dynamics Corp. v. OSHRC*, 599 F.2d 453, 464 (1st Cir. 1979) (emphasis added). Consequently, OSHA regulations cannot automatically be used as evidence of industry practice or of the standard of care to be exercised by a reasonable person in a consumer product liability case.[8]

**6.** The parties did not cite, and we have not found, any reported federal cases which directly pass upon the issue of the admissibility of OSHA regulations in a consumer product liability action against a manufacturer. The court in *Jasper v. Skyhook Corp.*, 89 N.M. 98, 547 P.2d 1140 (N.M.App.1976), *rev'd on other grounds*, 90 N.M. 143, 560 P.2d 934 (1977), however, ruled OSHA regulations inadmissible because irrelevant in a wrongful death action against a manufacturer of industrial machines.

**7.** Consumers may be confused by the sheer numbers of products available and may not possess enough technical expertise to assess and compare risks and values inherent in each product. Thus, the Consumer Product Safety Act, for example, is at least in part aimed at "assist[ing] consumers in evaluating the comparative safety of consumer products," 15 U.S.C. § 2051(b), and "to protect the public against unreasonable risks of injury associated with consumer products." *Id.* at 2051(b)(1). When informed, however, consumers exercise a substantial degree of choice in selecting a product; they can often avoid buying a product which is associated with undue risks.

On the other hand, employees may not be as easily able to implement a choice to forego risks inherent in a particular task which the employer has ordered to be performed. The

court in *Long Manufacturing Co. v. OSHRC*, 554 F.2d 903, 905 (8th Cir. 1977), for example, recognized that "frequently workers are under an economic compulsion to continue to work without safeguards although the danger of serious and permanent injury is obvious to them" (footnote omitted). When promulgating regulations to enhance workplace safety, therefore, a government agency might seek to remove the coercion attendant in the employment context by imposing stringent mandatory standards which might not be appropriate when applied to consumers. Conversely, simple disclosure of risks to consumers may suffice in many instances.

**8.** Our ruling approving the exclusion of this OSHA regulation is explicitly limited to the particular facts of this case: admission on behalf of a consumer-plaintiff to establish the manufacturer-defendant's standard of care in a product liability case concerning a product designed for consumer, not industrial, use. We express no opinion as to whether OSHA regulations and compliance therewith would be admissible in an action where the defendant is a manufacturer of industrial machines. *See Hagans v. Oliver Machinery Co.*, 576 F.2d 97 (5th Cir. 1978) (While the court did not pass upon the propriety of admitting evidence of compliance with OSHA regulations in this product

■ While we uphold the lower court's exclusion of the safety regulation on relevance grounds, we note that even had the ruling been erroneous, the error would have been harmless. Error in excluding evidence is harmless if exclusion of the evidence did not affect the complainant's substantial rights. Fed.R.Civ.P. 61; Fed.R.Evid. 103. *See, e. g., Collins v. Wayne Corp.,* 621 F.2d 777, 782 (5th Cir. 1980); *International Merger & Acquisition Consultants, Inc. v. Armac Enterprises,* 531 F.2d 821, 823 (7th Cir. 1976). Whether or not a party's substantial rights have been affected is determined from the context of the individual case. *International Merger, supra,* 531 F.2d at 823. "Where it appears that error in no way influenced the jurors, or had only a slight effect on them, the verdict and the judgment are to be affirmed." *Id.*

In this case, the safety regulation, even if arguably relevant, provided, at most, cumulative evidence. Prior to the exclusion of the regulation, the defendant had already admitted that "the defendant had knowledge of the fact that the lower guard must operate freely . . . ." The Underwriter's Laboratory (UL) standard, which was subsequently admitted, contained a requirement similar to the excluded regulation; it stated that the guard must close in less than three-tenths of a second.

In reality, the speed at which the guard should return was not in dispute. The plaintiff did not contend that the lower blade guard was designed to operate too slowly in contravention of any industry standard. Rather, the plaintiff theorized that the saw was "improperly designed or

manufactured because there was interference between the saw blade guard and the stop which prevented the guard from coming down as it should have at all times" and/or because the saw was not equipped with a brake which would have stopped the blade revolutions instantly. The plaintiff's assertion that the lower blade guard *should* close instantly was not disputed by Skil Corporation.

The plaintiff contends that, because the trial court excluded the OSHA regulation, the court's admission of a UL standard was erroneous.[9] We know of no evidentiary rule which would preclude the admission of one party's relevant evidence on the basis that the opponent's inadmissible evidence, although it contained some similar material, was excluded.

■ Massachusetts allows, in the trial court's discretion, a plaintiff or defendant to introduce safety standards promulgated by industry groups or nongovernmental testing organizations in product liability cases. *Torre v. Harris-Seybold, supra,* 404 N.E.2d at 105.

■ The standards clearly are relevant. The saw which injured the plaintiff was UL approved. The defendant's expert witness, Frank Consoli, a product design engineer employed by Skil Corporation, testified to his familiarity with UL specifications and testing procedures which directly related to the operation of the lower blade guard. Evidence of the UL standards, and this particular model saw's compliance with the standards,[10] was properly admitted as some

liability case, it did note that the safety of the defendant's practices had always exceeded industry practice and national and associational standards. The court cited the defendant-manufacturer's compliance with OSHA safety regulations as some evidence of the manufacturer's due care. In this case, the plaintiff was injured in an industrial workplace setting.)

9. The plaintiff's attorney objected to the testimony regarding UL standards "on the same basis that the Court earlier in this case excluded the OSHA standards." The court, however, noted that the two sets of standards "are not the same. In my opinion, although conforming it to the standards set up by U.L. . . . does not

necessarily mean that one is free from negligence; nevertheless conforming it with them may be of some assistance to the jury, so I'll allow conforming it to be brought up." The OSHA regulation was excluded as irrelevant because OSHA regulations apply only in the context of the workplace. That reason for exclusion obviously has no application to standards set by Underwriter's Laboratory which establishes minimum industry-wide standards.

10. The plaintiff, of course, could have cross-examined the defendant's expert on Skil Corporation's compliance with the UL standards. *See Forbro Design Corp. v. Raytheon Co.,* 532 F.2d 758, 762 (1st Cir. 1976).

evidence of the defendant's due care regarding the design and manufacture of the saw,[11] Frummer & Friedman, 1 *Products Liability* § 5.04 at p. 70.43 (1980), and of industry custom and practice. *Torre v. Harris-Seybold, supra,* 404 N.E.2d at 105.

The UL standards were also admissible for the purpose of discrediting plaintiff's expert witness, Daniel Harwood, who was an engineering consultant. Harwood admitted on cross-examination that he had noticed that the plaintiff's saw bore a UL seal of approval, but stated that he was not familiar with UL specifications for portable circular saws. The defendant was able to show through his own witness that UL specifications dealt with the performance of the very mechanism which the plaintiff alleged was defective. This cast doubt upon the thoroughness of Harwood's investigation of the saw and upon the extent of his general knowledge of the design and manufacture of portable circular saws.

In light of the relevance of the UL standards to the above issues, and the limiting instructions to the jury, the trial judge did not abuse his discretion in admitting the standards.

The plaintiff also argues that the trial court's refusal to admit evidence of prior accidents involving Skil saws was erroneous. The evidence at issue was Skil Corporation's pretrial answers to the plaintiff's interrogatory which requested the defendant to furnish information on complaints it had received involving personal injuries associated with the use of Skil saws before October 17, 1975. The defendant's answers identified six complaints, the injuries allegedly received and, in some cases, the model saw used. The answers did not indicate how the injuries occurred or whether or not they resulted from defective lower blade guards.

The plaintiff contends that the interrogatory answers were admissible to show Skil's knowledge of prior accidents (relevant to the duty to warn), to establish evidence of the existence of the blade guard defect, causation, and negligent design and to attack the credibility of the defendant's expert witness. We disagree.

■ Evidence of prior accidents is admissible on the first four issues only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. *Mutrie Motor Transportation, Inc. v. Interchemical Corp.,* 378 F.2d 447, 450–51 (1st Cir. 1967) (notice); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1315 (3rd Cir. 1978) (causation); *Julander v. Ford Motor Co.,* 488 F.2d 839, 846–47 (10th Cir. 1973) (negligent design). Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the trial judge who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility. *Mutrie Motor, supra,* 378 F.2d at 450–51.

■ In the instant case, the answers to the interrogatory indicated only that Skil Corporation had received six complaints of personal injuries allegedly involving saws manufactured by the defendant. The record is totally devoid of showing of the circumstances under which these accidents occurred.[12] The plaintiff failed to make the requisite showing that any of these alleged incidents had involved a defective lower blade guard. The operators identified in

---

11. The trial judge carefully charged the jury that the UL standards were not determinative on the issue of the defendant's due care. He instructed the jury, in part, that

> [T]o conform it to the standard is obviously desirable. At the same time it is going to be up to you to decide whether or not the unit itself meets with having been manufactured under a procedure which well [sic] call comporting with reasonable care on the part of a manufacturer.

12. The trial court repeatedly warned the plaintiff's attorney that admission of evidence regarding prior accidents would be limited "to notice of injuries received prior to the date that this saw was manufactured and . . . only with respect to injuries occasioned allegedly by defects in the lower blade guard. Otherwise, I think we are going to be trying a different case."

the defendant's answers could have been injured as a result of their own negligence for all that appears in the response.

The answers also were inadmissible for the purpose of impeaching the defendant's expert witness, Frank Consoli. The plaintiff failed to show that Consoli signed the answers, assisted in their preparation, made any statements about the subject matter, or had any personal knowledge of the facts represented.[13]

The plaintiff's final claim of error challenges the trial judge's rulings excluding from evidence several Consumer Product Safety Commission (CPSC) reports and a portion of a deposition of the defendant's expert witness which related to his knowledge of CPSC reports.[14] The plaintiff contends that this evidence should have been allowed for the same purposes for which he urged the admission of the interrogatory answers: to show Skil's knowledge of similar prior accidents, to establish evidence of the existence of the blade guard defect, causation, and negligent design and to attack the credibility of the defendant's expert witness, Frank Consoli.

The exclusion of the reports was appropriate. They constituted inadmissible hearsay on the issues of defect, causation, and negligent design. Fed.R.Evid. 801, 802. Even if the CPSC reports arguably could fit within Fed.R.Evid. 803(8)'s exception for

public agency reports, the trial court did not abuse its discretion in excluding the reports in the instant case. Rule 803(8) indicates that such reports should be excluded if untrustworthy. The CPSC reports are untrustworthy because they contain double hearsay in many instances—the CPSC investigator at one level, and the accident victim interviewee at yet another level removed. Most of the data contained in the reports is simply a paraphrasing of versions of accidents given by the victims themselves who surely cannot be regarded as disinterested observers.

In *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 635–36 (3d Cir. 1977), the Third Circuit upheld the exclusion of analogous National Transportation Safety Board accident reports which included statements by pilots, accident witnesses and reports of government investigators. The court held that the trial court did not abuse its discretion in refusing to admit the reports because

The Advisory Committee's Notes make clear that Federal Rule of Evidence 803(8) exempts from the hearsay rule only reports by officials; and of course the pilots and other witnesses are not officials for this purpose. Moreover, the memoranda submitted to the government by its investigators often contained statements from witnesses which would make

---

**13.** The trial court interceded to question Mr. Consoli in an effort to ascertain whether or not any prior accident evidence might be admissible:

The Court: ... Mr. Consoli, we are interested in knowing up to the time this man was injured on January 16th, 1976 had Skil Corporation received complaints of injuries received while using one of its rotary saws by reason of operation of a lower blade guard. If you know, tell us; if you don't know, tell us that also.

The Witness: I don't know.

**14.** The defendant objected to the admission of evidence relating to CPSC accident reports primarily on hearsay and relevancy grounds. Without articulating the precise basis for his ruling, the trial judge sustained the defendant's repeated objections to the plaintiff's continuing attempts to admit the evidence. The plaintiff's

constant violations of the trial judge's ruling elicited frequent judicial admonitions:

The Court: Again, you just identified that supposedly as a notice of accident. I think I am going to have to instruct the jury.

Again, I remind you that questions are not evidence and there is an effort here, I think, Mr. Pitts—I hate to say it, but I think a concerted effort on your part to get across to the jury that these were notices of accidents that were seen by this man....

\* \* \* \* \* \*

The Court: I am going to sustain the objection. If it keeps up, Mr. Pitts, I am simply going to have to take steps. The Consumer Product Safety Commission plays absolutely no part in this case, except that this gentleman volunteered that he saw a report from one of them. So I am going to ask you gentlemen to stay away from that subject matter altogether in the future.

such memoranda encompass double hearsay.

Similarly, the court in *Melville v. American Home Assurance Co.*, 443 F.Supp. 1074, 1115 n.75 (E.D.Pa.1977), *rev'd on other grounds*, 584 F.2d 1306 (3d Cir. 1978), admitted several Federal Aviation Administration directives into evidence, but excluded one specifically because its compilation apparently relied upon hearsay which indicated a lack of trustworthiness.

The CPSC reports also were irrelevant, during the course of Frank Consoli's cross-examination, on the issue of Skil Corporation's notice of similar prior accidents. Consoli had just testified that he personally did not know whether Skil had received complaints of injuries from rotary saws before the date of McKinnon's injury by reason of the operation of the lower blade guard. While the plaintiff contends that Consoli admitted to having seen one of the CPSC accident reports shown to him at trial by the plaintiff's attorney, this assertion mischaracterizes the record.

Consoli testified generally that he had seen "some" CPSC reports during the course of his employment. But, when the plaintiff's attorney narrowed his inquiry from familiarity with CPSC reports generally to the question of knowledge of CPSC reports between the relevant dates and bearing upon the relevant issues, Consoli testified that he had seen none. The plaintiff's attorney showed Consoli numerous CPSC reports at trial. When asked if he had seen the particular report tendered, Consoli responded negatively each time. The portion of the transcript to which the plaintiff refers us to support his assertion that Consoli did identify one of the reports at trial indicates that Consoli there was testifying to having seen *a* CPSC report before, not the reports just shown to him.[15]

The trial court therefore properly foreclosed questions regarding CPSC reports at trial without preventing proper cross-examination of Consoli relating to other possible sources of his knowledge of prior injuries. In fact, the judge himself had already asked Consoli whether he knew of any such prior accidents.

The plaintiff next argues that the excluded deposition testimony is relevant to the issue of Consoli's credibility because, the plaintiff alleges, Consoli's trial testimony "severely contradict[ed]" his deposition testimony regarding Consoli's knowledge of prior accidents. The plaintiff, however, manufactures the contradiction he alleges when he states that "Mr. Consoli testified under oath on February 13, 1980 at his deposition that he routinely received and read Consumer Product Safety Commission Reports of prior accidents involving the product in issue." In fact Consoli testified that he generally did not read individual cases:

Question: Let me point out to you this reference to the Consumer Product Safety Commission inquiry investigation, Case No. 760408 PBEP008. Have you seen this *type* of report before in your work with Skil Corporation?

Answer: I think I have. I think—*I don't recall this particular one.* I usually make notes and spend my time reading the summaries and the complete tabulations of the total data *rather than getting into individual cases.* (emphasis added).

At his deposition, Consoli was shown a report which was *not* among those later shown to him and marked for identification at trial. He stated at the deposition that he had not seen that particular report before.

15. The plaintiff further contends that "[t]he excluded cross-examination of Consoli [regarding the CPSC reports] was also important of [sic] the subject of credibility of Skil Corporation which had untruthfully denied or given evasive responses to the Plaintiff's Request for Production of Documents relating to knowledge about prior injuries and lawsuits from defective lower blade guards...." Skil's negative response to the plaintiff's Request for Production, however, is not inconsistent with Consoli's trial statement that he had seen one CPSC report because there was nothing in evidence to indicate that the one report which Consoli had seen concerned either a Model 559 saw or any other Skil saw with similar lower blade safety guards, motors and operation controls, categories to which the Request for Production was explicitly limited.

Even if Consoli had admitted to having seen that report before, however, his trial testimony that he recognized none of the reports there tendered would not have been contradictory. Consequently, the deposition evidence was irrelevant to the issue of Consoli's credibility, and therefore was properly excluded.

Because all of the plaintiff's assertions of error are either untimely or without merit, the judgment of the trial court is, in accordance with this opinion, affirmed.