Dennis **HICKS**, Appellant,

v.

**SIX FLAGS OVER MID–AMERICA**,
Appellee. (Two Cases)

Nos. 86–1732, 86–2453.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1987.

Decided June 23, 1987.
Rehearing Denied Aug. 6, 1987.

Steve J. Nangle, St. Louis, Mo., for appellant.

John M. Hessel, St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Dennis Hicks brought this diversity action for personal injuries against Six Flags Over Mid-America, alleging that Six Flags furnished him with an unsafe tool while he was performing construction work at Six Flags' amusement park. After a three-week trial, the jury returned a verdict in favor of Six Flags. Hicks appeals both the district court's [1] entry of judgment on the jury verdict and denial of relief from judgment. We affirm.

## I. BACKGROUND.

Six Flags operates an amusement park in Eureka, Missouri. In 1982, Six Flags entered into a construction management contract with Frontier Construction Corporation for purposes of constructing new amusement rides. In September 1982, Frontier contracted with Hicks' employer, the C.E. Bollmeier Company, to construct a storm ditch and install a drainpipe for a new ride at Six Flags. Bollmeier was to supply the labor, equipment and material necessary to complete the project. Bollmeier assigned two of its employees to the job: Hicks and Bernell Bennett.

Hicks and Bennett began work on the ditch on September 29, 1982. The next day, after they had filled the completed ditch back up with "clean rock," Fred Smith, Six Flags' construction supervisor, told Hicks and Bennett that the rock within the ditch needed to be compacted before it was paved over with asphalt. Hicks and Bennett had planned to close the ditch without tamping, because, ordinarily, clean rock is not tamped. Hicks testified that he told Smith that he had to call Bollmeier to get a tamper. Hicks telephoned Bollmeier and learned that it would take several

---

1. The Honorable William S. Bahn, United States Magistrate for the Eastern District of Missouri, Sitting by Designation.

hours to obtain Bollmeier's tamper, which meant that the job could not be completed until the next day, when the park would be open to the public. Hicks testified further that he told this to Smith, who responded by giving him permission to take an M.B.W. tamper located in Six Flags' landscaping shed. Smith denied telling Hicks of the M.B.W. tamper, and testified that he did not even know that there was any such tamper on the premises of Six Flags.

Hicks and Bennett went to the landscaping shed where they allegedly were given the M.B.W. tamper by an unidentified Six Flags' employee. The tamper belonged to an outside asphalting company which occasionally stored its equipment on the premises of Six Flags.

The alleged accident occurred when Hicks attempted to lift the 220–pound tamper to get it up onto the asphalt and the handle broke off, causing Hicks to fall backward and hit his back on the top of the catch basin of the drainage ditch. Neither Hicks nor Bennett reported the accident to Six Flags, however. Instead, they completed the job using the bucket on their backhoe and returned the defective tamper to the landscaping shed.

On February 22, 1985 (nearly two and one-half years after the accident), Hicks filed a complaint in the district court against Six Flags and M.B.W., the manufacturer of the tamper. M.B.W. was dismissed because the original handle on the

tamper had been replaced by another handle which was neither manufactured nor recommended by M.B.W. After a three-week trial, the jury returned a verdict in favor of Six Flags. The district court entered judgment on the jury's verdict on May 22, 1986. On September 23, 1986, Hicks filed a motion for relief from judgment, which the district court denied on November 11, 1986. Hicks appeals both the judgment and the denial of relief from judgment.

## II. ALLEGED TRIAL ERRORS.

### A. Verdict Directing Instruction.

Hicks contends that the district court erred in refusing his requested jury instructions B and C,[2] and instead giving Six Flags' instructions 14, 15 and 16. Instruction 14 read as follows:

In your verdict, you must assess a percentage of fault to defendant if you believe:

First, defendant supplied the M–B–W plate tamper to plaintiff for defendant's business purposes, and

Second, the replacement handle on the M–B–W plate tamper was improper and was therefore dangerous when put to a use reasonably anticipated, and

Third, the M–B–W plate tamper was used in a manner reasonably anticipated, and

**2.** Hicks' proposed verdict director, instruction B, read as follows:

In your verdict you must assess a percentage of fault to defen- dant [sic] Six Flags Over Mid-America whether or not plaintiff Dennis Hicks was partly at fault if you believe:
First, Defendant furnished a M–B–W plate tamper, for use which had been modified from the original design, and
Second, the replacement handle on the modified M–B–W plate tamper, was improperly designed and improperly attached and therefore, the modified M–B–W plate tamper, was dangerous when put to a use reasonably anticipated, and
Third, the modified M–B–W plate tamper, was used by plaintiff in a manner reasonably anticipated, and
Fourth, Plaintiff used ordinary care, in accepting the modified M–B–W plate tamper, from defendant, and

Fifth, Plaintiff used ordinary care in tamping the rock with the modified M–B–W plate tamper, and
Sixth, Plaintiff used ordinary care in trying to lift the modified M–B–W plate tamper, and
Seventh, Defendant knew or by using ordinary care could have known of such dangerous condition, and
Eighth, Defendant failed to warn plaintiff of such dangerous condition, and
Ninth, Defendant was thereby negligent, and
Tenth, as a direct result of such negligence plaintiff sustained damage.
Hicks also proffered the following definition as his proposed instruction C:
The term "for defendant's business purposes" means that the purpose for which the equipment is furnished is to complete the business dealing of the supplier. It is enough that the equipment is to be used in furtherance of any business purpose of the supplier.

Fourth, plaintiff used ordinary care in trying to lift the M–B–W plate tamper, and

Fifth, plaintiff did not know and by using ordinary care could not have known of such dangerous condition, and

Sixth, defendant knew or by using ordinary care could have known of such dangerous condition, and

Seventh, defendant failed to warn plaintiff of such dangerous condition, and

Eighth, defendant was thereby negligent, and

Ninth, as a direct result of such negligence plaintiff sustained damage.

Instruction 15 was essentially the converse of instruction 14. Instruction 16 provided the jury with the following definition of the term "for defendant's business purposes:"

The term "for defendant's business purposes" means that if it is understood that the person who is to do the work is to supply his own equipment, but the person for whom the work is to be done permits a piece of equipment to be used as a favor to the person doing the work, the equipment is not supplied for the defendant's business purposes.

Hicks objected to all three instructions during the instruction conference, based upon the definition of "for defendant's business purposes." At that time he prof-

fered instruction C, with his own definition of the term "for defendant's business purposes." He now argues that the instructions improperly interjected an issue of fact as to whether he was a business invitee or a licensee on Six Flags' premises. He argues further that the law does not condition Six Flags' liability as a landowner on whether it supplied the tamper for its business purposes.

Because Hicks proffered his own instruction on the definition of "for defendant's business purposes," there is an issue as to whether he waived his right to claim that such an instruction was altogether inappropriate. Hicks did not only proffer an instruction on this issue. In his trial brief, he argued for liability based upon § 392 of the Restatement (Second) of Torts, which requires the inclusion of "business purpose" language in the instructions.[3] By proceeding under section 392, which establishes the liability of a supplier of chattels for a business purpose, Hicks attempted to avoid having to plead and prove that Six Flags knew or had reason to know that the tamper was dangerous.[4]

■ Under Rule 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to

3. Section 392 of the Restatement provides:
One who supplies to another, directly or through a third person, a chattel to be used *for the supplier's business purposes* is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.
Restatement (Second) of Torts § 392 (1965) (emphasis supplied); *see Ridenhour v. Colson Caster Corp.,* 687 S.W.2d 938, 943–46 (Mo.Ct. App.1985).

4. Section 388 of the Restatement provides:
One who supplies directly or through a third person a chattel for another to use is subject

to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) *knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied,* and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
Restatement (Second) of Torts § 388 (1965) (emphasis supplied); *see Ridenhour,* 687 S.W.2d at 946 (plaintiff must prove defendant's actual knowledge of defect unless chattel supplied for business purpose).

which he objects and the grounds of his objection." Fed.R.Civ.P. 51; *Gardner v. Mr. Steak of Sun Ray, Inc.,* 774 F.2d 920, 923 (8th Cir.1985). This rule requires that objections be "sufficiently specific to bring into focus the precise nature of the alleged error." *Denniston v. Burlington Northern, Inc.,* 726 F.2d 391, 393 (8th Cir.1984) (quoting *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). Failure to make a proper objection to jury instructions constitutes a waiver of error, unless the alleged error was "plain error." *Id.* The "narrow exception" to Rule 51 for plain error applies only if the erroneous instruction resulted in a "miscarriage of justice." *Id.*

■ The plain error standard applies in the present case because Hicks did not specifically object to the inclusion of a business purpose instruction. Rather, he advocated liability under section 392, which requires inclusion of a business purpose instruction. *See generally Ridenhour v. Colson Caster Corp.,* 687 S.W.2d 938 (Mo. Ct.App.1985).

■ The record demonstrates that instructing the jury to find whether the tamper was supplied for defendant's business purposes, if erroneous, was not plain error resulting in a miscarriage of justice. To establish Six Flags' liability for supplying him with the tamper without proving defendant's business purposes, Hicks would have had to show actual knowledge of the defects on the part of Six Flags. *See* Restatement (Second) of Torts § 388 (1965); *Ridenhour,* 687 S.W.2d at 944. Similarly, to establish Six Flags' liability as a landowner, Hicks would have had to prove that Six Flags knew of, or by exercise of reasonable care, would have discovered the hazard. *See* Restatement (Second) of Torts § 343 (1965); *Hokanson v. Joplin Rendering Co.,* 509 S.W.2d 107, 110 (Mo.1974).[5] The record does not indicate that Hicks made this requisite showing of knowledge. Although there was evidence of prior mishaps involving the tamper, Six Flags did not have reason to know that the tamper

was dangerous, because no physical injury resulted and no threat of injury was apparent. Therefore Hicks has failed to establish that instructing the jury on section 392, rather than one of the other possible theories of liability, affected its verdict.

Hicks' claim that the district court erred in denying his requested instructions B and C is also without merit. Hicks' proffered verdict director did not properly state the law under section 392 because it did not include the "business purposes" element. *See Ridenhour,* 687 S.W.2d at 943. Similarly, Hicks' proffered definition of "for defendant's business purposes" did not *fully* state the law on this issue. *See id.* at 944; Restatement (Second) of Torts § 392 comments e and f (1965).

**B. Exclusion of Evidence of Prior Accident.**

Hicks contends that the district court erred in excluding the testimony of Robert Schuenemeyer, a former Six Flags' employee, regarding an accident which occurred at the amusement park six years before Hicks' accident, in 1976, with the identical M.B.W. tamper. The court ruled that evidence of an accident that occurred in 1976 was too remote in time to be relevant. Hicks argues that even if the testimony relating to an accident occurring in 1976 was inadmissible on grounds of remoteness, testimony relating to the condition of the tamper at that time was admissible. Hicks argues further that evidence of the 1976 accident was particularly probative because the court permitted testimony regarding other accidents occurring in 1982 and 1983, and the 1976 evidence would have established how long the defendant had been on notice of the danger.

■ Evidence of prior accidents is inadmissible unless the proponent shows that the accident was sufficiently similar in time, place or circumstances to that in the case at bar. *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1332 (8th Cir. 1985); *Harper v. Kroger Co.,* 618 F.2d 498,

---

**5.** It is not clear that the Restatement provision for landowner liability applies to the present case. We need not decide that question, however, in light of our present holding.

499 (8th Cir.1980) (per curiam). This rule may apply to evidence introduced for the purpose of showing defendant's notice of a dangerous condition. *See McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir.1981). Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility. *Id.* In addition, this court will not disturb the evidentiary rulings of the district court absent a showing of prejudice. *Grebin v. Sioux Falls Independent School District No. 49–5*, 779 F.2d 18, 20 (8th Cir.1985).

■ The district court acted well within its discretion in excluding the proffered testimony in question. Further, even if the testimony was relevant, in light of the adverse jury verdict despite evidence of other prior accidents, Hicks has not demonstrated prejudice so as to establish grounds for reversal.

### C. Exclusion of Hearsay Testimony.

Hicks asserts that the district court improperly sustained Six Flags' hearsay objection when he was asked on direct examination what Six Flags' supervisor Fred Smith had told him to do regarding the tamper. Hicks contends that his testimony that Smith told him to go get the M.B.W. tamper should have been admitted under Fed.R.Evid. 801(d)(2)(C) and (D) as an admission by a party-opponent's agent.

■ The record indicates that, whether or not the excluded testimony was an admission against interest, Hicks testified as to Smith's statement on more than one occasion. Hicks has therefore failed to demonstrate that he was prejudiced by the district court's ruling.

6. Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial may be grounds for relief from a final judgment under Fed.R.Civ.P.

### D. Instruction on Punitive Damages.

Hicks argues that the district court erred in refusing to instruct the jury on punitive damages. He contends that his evidence of prior accidents involving the tamper showed that Six Flags knew of its hazardous condition.

■ Under Missouri law, punitive damages may only be awarded in a negligence action if the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury. *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 436 (Mo.1985) (en banc). A plaintiff is entitled to a punitive damages instruction only if the evidence supports the award of punitive damages. *See Laney v. Coleman Co.*, 758 F.2d 1299, 1305 (8th Cir.1985) (applying Missouri law).

■ The record does not indicate that Six Flags knew or had reason to know that there was a high degree of probability that the defective handle on the tamper would cause injury. Although Six Flags' employee Glenn Wallach testified that the handle fell off when he moved the tamper in 1981, and that he thought the piece of equipment was dangerous, there was no evidence of any physical injury resulting from the defective handle. Further, Wallach's apprehension of danger did not stop him from again moving the tamper in 1982 and 1983. Therefore, the district court did not err in concluding that Six Flags did not have reason to anticipate a high probability of an injury resulting from the tamper.

### III. DENIAL OF RELIEF FROM JUDGMENT.

■ After the district court's entry of judgment, Hicks introduced the sworn statements of two former Six Flags' employees, Ethan Davis and Tim Olsin, seeking relief from judgment under Fed.R. Civ.P. 60(b)(2) and (3).[6] Hicks had been unsuccessful in attempts to locate Davis and Olsin prior to trial. He offered their post-trial statements as evidence of Six

60(b)(2). Under Fed.R.Civ.P. 60(b)(3), the district court may relieve a party from a final judgment based upon fraud, misrepresentation or other misconduct of an adverse party.

Flags' possession and control of the tamper. The district court denied Hicks' motion, holding that further evidence would only be cumulative and that Hicks had failed to present grounds for relief under Fed.R.Civ.P. 60(b)(3).

Hicks now argues that the district court erred in dismissing the evidence as cumulative, and that the statements showed fraud and misconduct by Six Flags. In particular, Hicks alleges that the statements show that Six Flags' witness James Sheppard committed perjury by testifying that no Six Flags' employee had ever used the tamper, and that Sheppard threatened Olsin that he would lose his job if he said anything about the tamper to anyone.

The record supports the district court's conclusion that additional testimony concerning use of the tamper by Six Flags' employees would merely have been cumulative.

With regard to Hicks' allegations of misconduct, we note that relief from judgment is only available under Rule 60(b)(3) where the adverse party's misconduct prevented the moving party from fully and fairly presenting its case. *E.F. Hutton & Co. v. Berns*, 757 F.2d 215, 217 (8th Cir.1985). The movant must prove misconduct by "clear and convincing evidence," and this court will not overturn a Rule 60(b)(3) ruling absent an abuse of discretion by the district court. *Id.*

Hicks' allegations of misconduct were not supported by clear and convincing evidence. Sheppard's deposition testimony that he "had no knowledge" of the M.B.W. tamper until June 1985 was not necessarily inconsistent with Hicks' evidence that Six Flags' employees were using the tamper. Moreover, Sheppard gave a sworn statement that he did not even know Tim Olsin, much less threaten him. Therefore, the district court did not abuse its discretion in denying Hicks' motion for relief from judgment.

Accordingly, the district court's orders entering judgment on the jury verdict and denying relief from judgment are affirmed.