158 F.3d 43
 78 Fair Empl.Prac.Cas. (BNA) 90, 74 Empl.
Prac. Dec. P 45,596,
41 Fed.R.Serv.3d 1171
 Edward HERNANDEZ-TORRES, et al., Plaintiffs, Appellants,
v.
INTERCONTINENTAL TRADING, INC., et al., Defendants, Appellees.
 No. 97-2163.
 United States Court of Appeals,
First Circuit.
 Heard June 1, 1998.
Decided Oct. 13, 1998.
 
 1
 Kevin G. Little, with whom Law Offices David Efrn was on brief, for appellants.
 
 
 2
 Jose R. Garca-Perez, with whom Bufete Bennazar, C.S.P. was on brief, for appellees.
 
 
 3
 Before BOUDIN, Circuit Judge, SCHWARZER,* Senior District Judge, and SARIS,** District Judge.
 
 
 4
 SCHWARZER, Senior District Judge.
 
 
 5
 Edward HernandezTorres, his wife Mara de los Angeles Jimenez, and the conjugal partnership constituted between them (collectively "Hernandez") sued Master Foods Interamerica ("MFI") and its parent company, Mars, Inc. ("Mars"), for religious discrimination in violation of 42 U.S.C. §§ 2000e-2, e-3 ("Title VII") and Puerto Rican Law.[1] Hernandez alleged in his complaint that MFI subjected him to a hostile work environment and constructively discharged him.
 
 
 6
 At the conclusion of the jury trial, the district court granted judgment as a matter of law to defendants on the constructive discharge claim. The jury returned a verdict in favor of defendants on the hostile work environment claim. Hernandez moved for a new trial pursuant to Federal Rules of Civil Procedure 59, which the district court denied.
 
 
 7
 Hernandez appeals from the district court's judgment as a matter of law and the denial of his motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we affirm.
 
 BACKGROUND
 
 8
 Hernandez began working for MFI in 1987, first temporarily and later permanently, as an accounts payable clerk. He was supervised by Angel Rodrguez in 1988, Hector Rodrguez in 1991, and Julio Ocampo throughout his employment.
 
 
 9
 He had become involved with a Christian group known as Defensores de la Fe shortly before he obtained a position at MFI. He alleges that his supervisors, including Ocampo, were fully aware of his fundamentalist beliefs when they offered him a job and that he rarely engaged in religious activities during scheduled work hours.
 
 
 10
 Hernandez made the following allegations of religious discrimination and retaliation:
 
 A. 1988 Incident with Angel Rodrguez
 
 11
 Hernandez contends that Angel Rodrguez repeatedly told offensive religious jokes in his presence and unjustly criticized Hernandez' work. Hernandez lashed out at Rodrguez on one such occasion, prompting Rodrguez to reprimand Hernandez in writing for insubordination and the use of profane language. He responded with a complaint in which he alleged that Rodrguez was persecuting him for religious reasons. Upon Ocampo's intervention, Hernandez admitted his insubordination and apologized in writing.
 
 B. 1991 Incident with Ocampo
 
 12
 Ocampo spotted Hernandez reading the Bible during his lunch break sometime after the summer of 1991. Although Ocampo knew that Hernandez was at lunch, he told Rodrguez to instruct Hernandez to stop reading the Bible. Hernandez did not file a complaint or make a written record of the incident.
 
 
 13
 Hernandez received training for MFI's new accounting system in 1992. Shortly thereafter, Ocampo granted Hernandez' request for a temporary employee to help Hernandez implement the accounts payable systems and complete his preexisting duties. Hernandez later began working with the refurbished payroll conversion system.
 
 C. September 2, 1992, Incident with Ocampo
 
 14
 On September 2, 1992, Hernandez was on the telephone when a coworker passed him a religious pamphlet. Hernandez alleges that Ocampo noticed the religious tract on his desk, called him into a conference room and threatened to fire him if he was caught reading or even speaking of religious matters again. Hernandez consulted Nellie Negrn, MFI's personnel manager, the same day and attempted to file a state insurance fund application to obtain treatment for stress. Negrn dissuaded him from filing the claim and he eventually attended sessions with MFI's in-house psychologists. Hector Rodrguez sent Hernandez a memorandum on September 3 requesting that he refrain from reading nonjob-related materials during work hours. Hernandez wrote a letter clarifying that he had been reading religious literature and apologizing for his conduct. He contends that Ocampo challenged him to a fight after reading this letter, which prompted Hernandez to apprise the personnel department of the encounter and resubmit his state insurance fund application. Negrn's assistant arranged a meeting with Ocampo and various MFI officials to discuss the incident. Ocampo extended an apology to Hernandez after the meeting, which he accepted.
 
 
 15
 Hernandez alleges that despite Ocampo's apology, his employment situation worsened following the September 1992 incident. Specifically, he felt pressured to complete his assigned tasks in eight hours and feared that working overtime would result in his discharge from MFI. In fact, he was granted overtime each time he requested it and was the only accounting employee who received payment for the extra work. Hernandez also noted a marked increase in electronic messages assigning him additional duties commenting on his lack of productivity after September 1992. However, his supervisors, including Ocampo, continued to commend his performance, and Ocampo approved the hiring of another temporary employee to ease Hernandez' burden in November 1992.
 
 
 16
 Hernandez resigned on February 2, 1993, after learning that Ocampo had decided to terminate his temporary help. Rodrguez confirmed Hernandez' resignation in a February 2 memo which made no reference to religious discrimination. At Ocampo's request, Hernandez continued to work until the end of the week. Although Hernandez initially cited stress-related reasons for his resignation, in a February 5 memorandum he referred to the September 1992 incident with Ocampo as the source of his employment difficulties.
 
 DISCUSSION
 I. REFUSAL TO INSTRUCT ON RETALIATION
 
 17
 The district court denied Hernandez' motion for a new trial, rejecting his contention that the court should have instructed the jury on the retaliation claim. It stated that it refused to give an instruction because "there was no evidence in the Record to support the allegation that Defendants discriminated against Plaintiff as a result of his opposition to any alleged employment practice."[2] Hernandez contends that the court erred in refusing to instruct on retaliation. He argues that Ocampo's retaliatory conduct, which resulted in a workplace permeated with harassment and in Hernandez' ultimate "discharge," was supported by substantial evidence at trial.
 
 
 18
 Title VII makes it unlawful for an employer to retaliate against an employee:
 
 
 19
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 20
 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation in the workplace, Hernandez must demonstrate that: (1) He engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity. See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir.1996).
 
 
 21
 We assume for purposes of this disposition that Hernandez engaged in protected activity and that his informal complaint to the personnel department constituted sufficient opposition. His appeal fails, however, because he did not suffer an adverse employment action. Section 2000e-3 encompasses a variety of adverse employment actions, including demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees. See Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir.1994) (citing 3 Arthur Larson & Lex K. Larson, Employment Discrimination, § 87.20, at 17-101 to 17-107 (1994)). The evidence reflects none of such actions.
 
 
 22
 Hernandez complains that he received an increased amount of electronic messages which contained onerous assignments and what Hernandez interpreted as critical reports on his productivity. This influx of electronic messages does not, however, rise to the level of an adverse action because MFI supervisors similarly urged all MFI accounting employees to implement the new systems quickly and efficiently. Significantly, Hernandez continued to receive favorable performance evaluations from his supervisors, including a November 25 memorandum lauding his installation of the payroll system. Ocampo's alleged admonition that Hernandez complete his work within an eight hour period "or else" does not constitute adverse action. Hernandez was granted overtime each time he requested it and was the only accounting employee who received temporary assistance and payment for working overtime. Cf. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997) (holding that divesting employee of assignments and responsibilities establishes an adverse employment action).
 
 
 23
 Hernandez has failed to offer facts indicating that his informal complaint caused any adverse actions. Specifically, Hernandez' accusations are "lacking in the concrete documentation necessary to prove the causal link between [his] protected activity and [his] retaliatory treatment." See Ramos v. Roche Prods., Inc., 936 F.2d 43, 49 (1st Cir.1991). First, the additional responsibilities outlined in the electronic messages, though onerous, resulted from a policy that Hernandez agreed to implement long before Ocampo asked him to "go outside." See, e.g., Hoeppner v. Crotched Mountain Rehabilitation Ctr., Inc., 31 F.3d 9, 16 (1st Cir.1994) (holding that employee failed to establish causal link between employee's involvement in protected union activity and August 1990 probation because there was no evidence in the record that union activity occurred before then); Ramos, 936 F.2d at 49 (noting that petitioner was passed over for promotion twice before signing affidavit with EEOC in reaching conclusion that petitioner failed to establish causal link between protected activity and adverse employment action).
 
 
 24
 In addition, that Ocampo imposed disadvantageous assignments and directed that work be completed in eight hours "or else" does not constitute retaliation. Hernandez' accounting coworkers were required to work long hours as well. If Hernandez was singled out, it was in a laudatory fashion as the only accounting employee to receive overtime pay or temporary assistance in late 1992 and early 1993. In sum, he failed to present evidence sufficient to raise an inference that the additional stress he experienced at MFI after September 1992 resulted from retaliation rather than from the previously agreed upon implementation of MFI's new accounting system.
 
 
 25
 Finally, Hernandez' claim that he suffered a retaliatory constructive discharge fails. A "discharge" under § 2000e-3(a) may be constructive as well as a direct firing. See Hart v. University Sys., 938 F.Supp. 104, 111 (D.N.H.1996) (holding that employee established material issue of fact as to retaliatory constructive discharge); see also Munday v. Waste Management of N. America, Inc., 126 F.3d 239, 243 (4th Cir.1997) (explaining that constructive discharge is adverse employment action when "record discloses that it was in retaliation for the employee's exercise of rights protected by the Act"), cert. denied, --- U.S. ----, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998). To prove a retaliatory constructive discharge, Hernandez must establish that his work environment was hostile. See Smith v. Bath Iron Works Corp., 943 F.2d 164, 166 (1st Cir.1991) (noting that magistrate judge found that employee established hostile work environment element of constructive discharge); see also Schwapp v. Town of Avon, 118 F.3d 106, 112 (2d Cir.1997) (holding that constructive discharge claim "rises or falls on the determination of the hostile work environment facts"); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir.1997) (holding that in light of court's conclusion that no hostile work environment existed when petitioner left her place of employment, she cannot prove "the necessary predicate to maintain a constructive discharge claim"), cert. denied, --- U.S. ----, 118 S.Ct. 1079, 140 L.Ed.2d 137 (1998); Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."). Because the jury, with all of Hernandez' evidence on his retaliation claim before it, returned an adverse verdict on his hostile work environment claim, he cannot succeed on his retaliatory constructive discharge claim. Hernandez argues that another jury might find the requisite hostile work environment, but he has had his day in court and is not entitled to a new trial on that speculation alone. The jury having rejected the hostile work environment claim, it necessarily rejected the basis for the retaliatory constructive discharge claim.
 
 
 26
 II. REJECTION OF PROFFERED HARRIS INSTRUCTION
 
 
 27
 The district court's hostile work environment instruction correctly informed the jury of the requisite elements of Hernandez' claim, stating in pertinent part:
 
 
 28
 You must determine whether there was hostile religious harassment based on the totality of the circumstances, and you may consider the following factors: The total physical environment of the plaintiff's work area; the nature of the unwelcome acts or words; the frequency of the offensive encounters; the severity of the conduct; and the context in which the religious harassment occurred; whether the conduct was unwelcome; and the effect o[n] the plaintiff's psychological well-being....
 
 
 29
 Hernandez unpersuasively argues that the court failed to follow Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), when it refused to instruct the jury that "to be actionable, a hostile environment need not seriously affect an employee's psychological well-being or lead the employee to suffer injury."
 
 
 30
 The court's instruction, fairly read, conforms to the Harris Court's holding that "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Id. at 23, 114 S.Ct. 367. The instruction adequately explained the law regarding Hernandez' hostile work environment claim. See McKinnon v. Skil Corp., 638 F.2d 270, 274 (1st Cir.1981) ("As long as the judge's instruction properly apprises the jury of the applicable law, failure to give the exact instruction requested does not prejudice the objecting party.").
 
 
 31
 III. REJECTION OF "MOTIVATING FACTOR" INSTRUCTIONS
 
 
 32
 Hernandez argues that the district court erred in refusing to instruct the jury that an employee's religious beliefs need only be a motivating factor rather than the sole reason for actionable mistreatment under the Civil Rights Act of 1991. See 42 U.S.C. §§ 2000e-2(m).
 
 
 33
 The court declined to give Hernandez' proposed instructions and overruled his objection, noting that a jury instruction on motivation is inapposite in the context of a hostile work environment claim. The court further held that its hostile work environment charge adequately instructed the jury that Hernandez' religious convictions did not have to be the sole motivating factor for the alleged harassment and hostile work environment.
 
 
 34
 The court's instruction, fairly read, does not imply that Hernandez was required to prove that religious discrimination constituted the sole motivation for defendants' conduct. It "properly apprise[d] the jury of the applicable law." See McKinnon, 638 F.2d at 274.
 
 IV. CONSTRUCTIVE DISCHARGE CLAIM
 
 35
 Hernandez contends that the evidence was sufficient to warrant submission of his constructive discharge claim to a jury. As discussed above, Hernandez' constructive discharge claim fails because the jury rendered an adverse verdict on the requisite hostile work environment claim.
 
 
 36
 V. ADMISSION AND EXCLUSION OF WITNESS TESTIMONY
 
 
 37
 We review the admission or exclusion of evidence for abuse of discretion. See Cohen v. Brown Univ., 101 F.3d 155, 185 (1st Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997). We review the district court's balancing of probative value against prejudicial impact to determine "whether the balance actually struck is so egregiously one-sided that it requires reversal." Espeaignnette v. Gene Tierney Co., 43 F.3d 1, 8 (1st Cir.1994).
 
 A. Admission of Sandra Marrero's Testimony
 
 38
 Hernandez argues that the district court, over his repeated objection, erroneously permitted Sandra Marrero to testify. He further contends that defendants violated Federal Rule of Civil Procedure 26(a)(3) because Marrero went unnamed during the discovery period.[3] He complains that had her identity been timely disclosed, he might have deposed her instead of another witness in conformity with the court's allotment of five depositions. The court ruled that Hernandez' argument was "meritless" and did "not require additional discussion."
 
 
 39
 The district court did not err. Federal Rule of Civil Procedure 26(a)(3) does not require disclosure of a prospective witness' identity during the discovery period. Rather, Rule 26(a)(3)(C) declares that "[u]nless otherwise directed by the court, these disclosures shall be made at least 30 days before trial." Marrero was named as a witness in the October 16, 1996, pretrial order, well over thirty days before trial commenced on November 21, 1996.
 
 
 40
 B. Exclusion of Victor Nales and Jasmin Vasquez as Witnesses
 
 
 41
 Hernandez argues that the district court erred in excluding the testimony of Victor Nales and Jasmin Vasquez. Hernandez alleges that Nales and Vasquez were identified in his initial administrative complaint and were included in the collective description "employees or representatives of the defendants" offered during the discovery period.[4] He further contends that the court's decision to exclude Nales and Vasquez affected the outcome of the trial because they were the only former MFI employees listed in the pretrial order and thus would have corroborated his testimony. The district court summarily dismissed Hernandez' claim, noting that the issue did "not require additional discussion."
 
 
 42
 The district court did not abuse its discretion. The exclusion of Nales and Vasquez as witnesses was harmless because the pretrial order did not distinguish between the testimony of Nales and Vasquez and that of the eight MFI employees listed in the same group of prospective witnesses. Without specifying what Nales and Vasquez would have testified at trial, Hernandez has not shown that their testimony would not be cumulative. See Hall v. Arthur, 141 F.3d 844, 849 (8th Cir.1998) (holding that exclusion of testimony was harmless because testimony was cumulative and "defendants did not make their offer of proof in the form of questions and answers"). Hernandez' general assertion that the prospective witnesses would have corroborated his testimony concerning religious harassment at MFI is insufficient. See McDonald v. Steward, 132 F.3d 225, 232 (5th Cir.1998) ("The burden of proving substantial prejudice lies with the party asserting error.") (citing Federal Deposit Ins. Corp. v. Mijalis, 15 F.3d 1314, 1319 (5th Cir.1994)).
 
 CONCLUSION
 
 43
 We affirm the district court's entry of judgment as a matter of law and its denial of Hernandez' motion for a new trial.
 
 
 
 *
 Of the Northern District of California, sitting by designation
 
 
 **
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 Hernandez brought claims under Puerto Rico Laws Annotated title 29, § 185(a)(1995); Puerto Rico Laws Annotated title 29, § 146 (1995); and general provisions of the Puerto Rican civil code governing tortious and contractual acts. Because he does not raise these claims on appeal, we need not consider them
 
 
 [2]
 The court did not rely on a waiver by Hernandez of the unlawful retaliation claim
 
 
 [3]
 Hernandez does not rest his argument on the disclosure requirements of Federal Rule of Civil Procedure 26(a)(1)
 
 
 [4]
 Nales and Vasquez could not have been included because during the discovery period they were no longer employed at MFI