Sefiane v. Wal-Mart Stores, Inc.     CV-00-592-M   03/27/02  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Yousfi Joe Sefiane

    v.                                       Civil No. 00-592-M
                                          Opinion No. 2002 DNH 068
Wal-Mart Stores, Inc.


**REPORT AND RECOMMENDATION**

Plaintiff Yousfi Joe Sefiane brought a four count state writ based upon national origin discrimination.  Defendant Wal-Mart Stores, Inc. ("Wal-Mart") removed the case to this court asserting both diversity and federal claim subject matter jurisdiction.  Defendant moved for summary judgment on each count and that motion has been referred to me for proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

### Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  A genuine issue is one "that properly can be

resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the non-movant, resolving all inferences in its favor, and determines whether the moving party is entitled to judgment as a matter of law. See Saenger Org. v. Nationwide Ins. Assocs., 119 F.3d 55, 57 (1st Cir. 1997). The undisputed facts, viewed in the light most favorable to Yousfi Joe Sefiane, are recited below.

Background

Plaintiff Sefiane is a former Wal-Mart management employee. In this action, he asserts claims against Wal-Mart under Title VII and N.H. Rev. Stat. Ann. ("RSA") § 354-A for national origin

2

discrimination (Count I), as well as claims for intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III) and negligent supervision (Count IV).

Sefiane is a college graduate who, after completing Wal-Mart's management training program, was employed first as an assistant manager and then as a co-manager at Wal-Mart. While awaiting a transfer to California, Sefiane worked at a number of store locations to help convert those stores to supercenters. Upon the request of Jeffrey Whitney, Wal-Mart's Concord, New Hampshire store manager, Sefiane was transferred to that store as a co-manager in June of 1999. Whitney became Sefiane's immediate supervisor. Shortly after plaintiff started his employment at the Concord Supercenter, Whitney learned that plaintiff was from Morocco.

Sefiane states that from July 1999 into October 1999, Whitney referred to him as a foreigner. These incidents occurred in various locations and took place both with and without witnesses. As Sefiane describes, Whitney called him a foreigner

> [m]any times. It became such a habit that it was a norm for him.
> * * *
> I was being so degraded that I was basically referred

3

> to him in his eyes as just a foreigner. It was almost like I didn't have a name. I didn't have a - - I was just a foreigner.

Defendant's Exh. A, p.81. In a July 1999 management meeting, plaintiff started to speak when Whitney "rudely interrupt[ed] and [said], 'What does a foreigner know? You're just a foreigner. What do you know?'" Defendant's Exh. A, pp. 78-79. Sefiane was so embarrassed that he put his head down and said nothing. Plaintiff's Vol I, Exh. B, p.23.

Sefiane complained to Whitney (as did other managers) about Whitney's actions toward him. Whitney acknowledged only one joking reference to Sefiane as a foreigner, but other managers heard Whitney refer to Sefiane as a foreigner on other occasions.

In September or October 1999, Sefiane complained to the district manager, Lisa Cowden, that Whitney had called him a foreigner many times. Within a week of his complaint to Cowden, plaintiff was transferred to the night shift. Sefiane alleges that it was unheard of for a co-manager to work any shift other than a day shift. Wal-Mart claims, without any support in the record, that the shift change was routine. In December, Whitney presented Sefiane with a written "coaching" regarding allegedly deficient work that Sefiane performed in the time period

4

following his complaint to Cowden.

In order to assist Cowden in conducting an investigation of Whitney's behavior, Sefiane provided her with the names of witnesses. Cowden, however, failed to interview the witnesses identified by the plaintiff. After interviewing Whitney, Cowden concluded that there had been only one instance in which Whitney had called Sefiane a foreigner. The record is clear that independent witnesses heard Whitney call Sefiane a foreigner numerous times, and Cowden has admitted that "[i]t would have made a difference" if she had determined that Whitney had referred to Sefiane as a foreigner on multiple occasions. Plaintiff's Exh. D, p.69.

Cowden did have the regional manager, Gregory Samuelson, call Sefiane. During the course of their conversation, Sefiane described Whitney's behavior to Samuelson, and Samuelson asked whether a transfer to an alternative location would help. Sefiane also asked Samuelson to conduct an investigation.

Within a few days of the telephone call, Sefiane met with Whitney, Cowden and Samuelson. At that meeting, Sefiane was offered a transfer to the Oneida, New York Wal-Mart where Sefiane could remain a co-manager. Plaintiff says that he was never

given the option of remaining a co-manager in Concord, although Cowden testified that Sefiane was not asked to leave. Cowden's testimony is inconsistent with the defendant's assertion to the New Hampshire Human Rights Commission, which stated:

> On January 1, 2000 Charging Party was demoted to the position of Assistant Manager due to his continued performance issues. It is Respondent's policy to transfer a member of management when they are demoted to another location to try and get a "fresh start".

Plaintiff's Exh. H, p.3.

Sefiane decided to decline the Oneida transfer because Samuelson was the regional manager for that store and Sefiane did not want to work for a manager who did not want to investigate his claims. Instead, Sefiane asked for and received a transfer to Maryland. In Maryland, Sefiane became an assistant manager rather than a co-manager.

Despite his belief that Samuelson would not investigate his allegations, Sefiane stated that he went to Maryland with the "impression . . . [that] . . . Wal-Mart will do an investigation, they'll call around and make things right." After nine (9) months in Maryland, during which his work was admittedly deficient, Sefiane still had heard nothing from Wal-Mart regarding his complaints. In October 2000, Sefiane resigned.

6

Wal-Mart argues that it is entitled to summary judgment on Sefiane's Title VII claims of harassment, retaliation and constructive discharge on the grounds that (a) the alleged harassment was not sufficiently severe to support a Title VII claim; (b) Wal-Mart absolved itself of any liability by promptly putting an end to the alleged harassment following Sefiane's complaint; (c) Sefiane's failure to set forth evidence of an adverse employment action defeats his retaliation claim; and (d) the constructive discharge claim is not sustainable given Sefiane's refusal to accept the lateral transfer to Oneida, New York and his unreasonable delay in tendering his resignation. In addition, Wal-Mart argues that it is entitled to summary judgment on plaintiff's emotional distress and negligent supervision claims because those claims are barred by the New Hampshire workers' compensation statute, RSA 281-A:8.[1]

A. Title VII Claims

1. Allegations of Harassment

To establish a hostile work environment under Title VII,

---

[1]Wal-Mart has not moved for summary judgment on Sefiane's claims for national origin discrimination pursuant to RSA § 354-A.

7

the plaintiff must show that the harassment based on national origin was "sufficiently severe or pervasive to alter the conditions of [his] employment," and that "the work environment was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [the plaintiff] in fact did perceive to be so." Conto v. Concord Hosp., Inc., 265 F.3d 79, 82 (1st Cir. 2001)(internal quotations and citations omitted).[2] This is not a precise test, and the decision as to "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-3 (1993). See also Conto, 265 F.3d at 81 (a determination as to whether the defendant subjected the plaintiff to a hostile work environment "necessarily entail[s] a fact-specific assessment of all the attendant circumstances."). "Several factors typically should be considered in making this determination: 'the frequency of the discriminatory conduct; its severity; whether it is physically

_____

[2]While there is little case law regarding national origin discrimination, the court may rely on Title VII cases involving harassment based on sex, race, color or religion. See Boutros v. Canton Reg'l Transit Auth., 997 F.2d 198, 202-03 (6th Cir. 1993)(the principles applicable to sexual harassment are applicable to harassment on the basis of race, color, religion, or national origin).

8

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'." O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001)(quoting Harris, 510 U.S. at 23). However, no single factor is required. See Harris, 510 U.S. at 23.

The requirement that the harassment be sufficiently severe or pervasive to alter the plaintiff's employment conditions "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Id. at 21. Accordingly, while offhand comments, isolated incidents and mere utterances of an epithet are insufficient to constitute harassment under Title VII, see id.; O'Rourke, 235 F.3d at 729, "Title VII comes into play before the harassing conduct leads to a nervous breakdown." Harris, 510 U.S. at 22.

Wal-Mart argues that Whitney's actions consisted only of mild epithets that occurred over a brief period and were not sufficiently severe or pervasive to alter Sefiane's employment conditions. While Whitney's statements occurred during a period of only three to four months, there is evidence indicating that the statements occurred so frequently as to become habitual. The

9

evidence also shows that Whitney's comments were common enough to be heard on numerous occasions by independent witnesses, and that Whitney's behavior was sufficiently offensive that other managers complained to Whitney about his treatment of Sefiane. Moreover, the evidence suggests that Whitney's repeated use of the term "foreigner" humiliated Sefiane and that Sefiane's work performance may have declined as a result of the alleged behavior. Based on these facts, a jury could determine that the alleged harassment created a hostile work environment. See DeNovellis v. Shalala. 124 F.3d 298, 311 (1st Cir. 1997)(harassment that is severe enough to alter the victim's workplace experience or pervasive enough to become the defining condition of the workplace violates Title VII).[3]

Because harassment serious enough to create a hostile work

---

[3]The fact that Whitney's behavior toward the plaintiff involved no physical threats does not defeat Sefiane's harassment claims, as long as the evidence is sufficient to show that Whitney's statements amounted to something more than single acts that were isolated or sporadic. See Harris, 510 U.S. at 23 (while physically threatening conduct is relevant in determining whether an environment is hostile or abusive, neither this nor any other single factor is required); O'Rourke, 235 F.3d at 732 (isolated or sporadic acts that are not severe enough to alter the work environment and create an abusive work environment will not support a viable claim of hostile work environment). For purposes of summary judgment, Sefiane has shown that the allegedly harassing behavior was consistent and even habitual over the course of three to four months.

environment often involves a cumulative process in which a series of acts or events mount over time to create an unlawful atmosphere, the question as to when offensive conduct violates Title VII is often better resolved by the factfinder at trial and not on summary judgment. See O'Rourke, 235 F.3d at 727, 732. Although the conduct complained of here is much closer to conduct that is mildly offensive than it is to conduct that is clearly egregious, I find that the plaintiff has introduced sufficient evidence of harassment to satisfy his burden on summary judgment. The question as to whether Whitney's use of the word "foreigner" was or at some point over the course of three to four months became sufficiently severe or pervasive to support a Title VII harassment claim is best reserved for trial.

2.    Affirmative Defense to Harassment Claim

Wal-Mart further argues that even if Whitney's statements created a hostile work environment, Wal-Mart is entitled to summary judgment on the harassment claim because Wal-Mart promptly put an end to the harassment upon learning of Whitney's behavior. Under the controlling authority, however, Wal-Mart has not established a defense to liability for harassment based upon the uncontroverted facts.

11

In a Title VII hostile work environment case, a defendant employer may avoid vicarious liability for the misconduct of a supervisor by establishing that it is entitled to the affirmative defense set forth in the Supreme Court's holdings in <u>Faragher v. Boca Raton</u>, 524 U.S. 775 (1998) and <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998). The defense, which is only available when no tangible employment action has been taken against the plaintiff, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior [based on national origin], and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Faragher</u>, 524 U.S. at 807.[4] <u>See</u> <u>also</u> <u>White v. New Hampshire Dep't of</u>

---

[4]Instead of relying on <u>Burlington</u> and <u>Faragher</u>, Wal-Mart urges the court to apply <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258 (5th Cir. 1999), which held that an employer's prompt corrective action was sufficient by itself to avoid vicarious liability under Title VII for sexual harassment committed by a supervisory employee. I agree with the Tenth Circuit Court of Appeals' rejection of the <u>Indest</u> decision, and therefore decline to apply its reasoning. <u>See</u> <u>Harrison v. Eddy Potash, Inc.</u>, 248 F.3d 1014, 1025-26 (10th Cir. 2001). In particular, the <u>Indest</u> court's refusal to apply the second prong of the <u>Burlington/Faragher</u> defense ignores the Supreme Court's unambiguous directive that an employer wishing to avoid vicarious liability must prove both elements of the affirmative defense. <u>See</u> <u>Burlington</u>, 524 U.S. at 765 (the affirmative defense to

12

<u>Corr.</u>, 221 F.3d 254, 261 (1st Cir. 2000)(setting forth the affirmative defense available to employers under <u>Faragher</u>).

There remains a genuine question of fact as to whether Wal-Mart took reasonable care to prevent and correct promptly Whitney's allegedly harassing behavior.  Viewed in the light most favorable to Sefiane, the facts show that following Sefiane's complaints, Wal-Mart neglected to perform any type of serious investigation before concluding that there had been only one instance when Whitney called Sefiane a foreigner.  Moreover, there is no evidence that Wal-Mart took any action against the offending supervisor.  Instead, the evidence indicates that the allegedly harassing behavior ceased because Wal-Mart transferred Sefiane to the night shift.  Because it was so extraordinary for Wal-Mart to place any co-manager on the night shift, it could be inferred that this action was intended to punish Sefiane for his complaints, and was unrelated to any effort to protect him from Whitney.

In addition, Wal-Mart has failed to provide any evidence to show that it can meet the second element of the <u>Burlington/Faragher</u> defense.  The evidence demonstrates that

vicarious liability comprises *two necessary elements*).

13

Sefiane took affirmative steps to prevent additional harassment by complaining first to Whitney and then to Cowden about Whitney's use of the term "foreigner." Sefiane also requested that Cowden and then Samuelson conduct an investigation. He even provided Cowden with a list of witnesses in order to aid in an investigation. Wal-Mart has provided no support for a finding that these actions were insufficient or in any way unreasonable. I recommend, therefore, that Wal-Mart's motion for summary judgment on plaintiff's harassment claim be denied.

3. Retaliation

In order to establish a prima facie case of retaliation under Title VII, the plaintiff must show that: "(1) [h]e engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). See also Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 3 (1st Cir. 1993). Wal-Mart argues that it is entitled to summary judgment on the plaintiff's retaliation claim due to Sefiane's failure to set forth evidence of an adverse employment action. More specifically, Wal-Mart asserts that its decision to transfer

14

Sefiane from Concord to another location did not constitute an adverse employment action because (a) Sefiane demanded that Wal-Mart transfer him from the Concord store and (b) Sefiane's demotion from co-manager of the Concord store to assistant manager of a Maryland store was the result of Sefiane's refusal to accept a co-manager position in Oneida, New York.

Wal-Mart's version of the facts is inconsistent with the summary judgment record. First, the record indicates that Wal-Mart, not Sefiane, proposed a transfer. Second, Wal-Mart's admission to the New Hampshire Human Rights Commission raises an issue of fact as to whether or not Wal-Mart gave Sefiane an option to remain in Concord as a co-manager. Third, Wal-Mart's representation to the Human Rights Commission also raises an issue of fact as to whether Wal-Mart intentionally demoted Sefiane or whether it would have allowed Sefiane to remain a co-manager.

The law is unsettled concerning when a lateral transfer constitutes an adverse employment action. See Ray v. Henderson, 217 F.3d 1234, 1240-42 (9th Cir. 2000)(describing the split in the circuits as to what constitutes an adverse employment action and citing case law considering whether adverse employment

15

actions encompass lateral transfers). Moreover, while the First Circuit has determined that adverse employment actions include "disadvantageous transfers or assignments," Hernandez-Torres, 158 F.3d at 47, it has provided no guidance as to when a transfer may be considered disadvantageous so as to constitute evidence of retaliation. First Circuit case law does specify, however, that adverse employment actions include demotions. See White, 221 F.3d at 262; Hernandez-Torres, 158 F.3d at 47. Because Sefiane has raised a question of fact as to whether Wal-Mart intentionally demoted him from co-manager to an assistant manager position, I recommend that Wal-Mart's motion for summary judgment on plaintiff's retaliation claim be denied.

    4.    Constructive Discharge

    In order to prevail on a constructive discharge claim under Title VII, the plaintiff must show that he resigned within a reasonable time period after the alleged harassment. See Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000); Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991). Wal-Mart correctly argues that Sefiane's resignation did not occur within a reasonable time after the alleged harassment ceased. Specifically, Sefiane admits that

16

Whitney's allegedly harassing behavior occurred from July 1999 into October 1999. There is no evidence indicating that any harassment occurred after that time, either in the Concord store or after Sefiane had transferred to the Maryland store. Sefiane did not resign from Wal-Mart until October 2000, about one year after Whitney's "foreigner" comments had ceased. Pursuant to relevant authority, Sefiane's resignation occurred too late after the offensive conduct had ended to be considered a constructive discharge. See Landrau-Romero, 212 F.3d at 613 (no constructive discharge where resignation occurred seven months after the alleged harassment); Smith, 943 F.2d at 167 (no constructive discharge where plaintiff resigned six months after the last offensive conduct occurred). Accordingly, I recommend that the court grant Wal-Mart's motion for summary judgment on the constructive discharge claim.

B.    State Law Claims

Wal-Mart argues that it is entitled to summary judgment with respect to the plaintiff's state law claims for intentional and negligent infliction of emotional distress and for negligent supervision because those claims are barred by New Hampshire's Workers' Compensation Act ("Act"). Both the First Circuit and

17

this court have interpreted the Act's exclusivity provision, RSA § 281-A:8,[5] as precluding "claims under common law or statute by employees against employers for personal injuries falling under § 281-A:2, including emotional distress." Martin v. Applied Cellular Tech., Inc., 2002 WL 398473 *3 (1st Cir. Mar. 19, 2002). See also Holland v. Chubb Am. Serv. Corp., 944 F. Supp. 103, 105 (D.N.H. 1996)(the exclusivity provision of New Hampshire's Worker's Compensation Act prohibits an employee from maintaining a common law action against his employer for personal injuries, including an action for intentional or negligent infliction of emotional distress, arising out of the employment relationship); Miller v. CBC Cos., Inc., 908 F. Supp. 1054, 1068 (D.N.H. 1995)(the exclusivity provision of the New Hampshire Workers' Compensation Act precludes employees from asserting both intentional and nonintentional torts against their employers). Under this line of cases, Sefiane's claims would be barred under

---

[5]RSA 281-A:8 states in relevant part:

> I.  An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions of this chapter and, on behalf of the employee . . . to have waived all rights of action whether at common law or by statute or provided under the laws of any other state or otherwise:
>     (a) Against the employer . . . .

18

the Act. These cases, however, did not consider the effect that recent amendments to the Act may have had on the viability of personal injury claims by an employee against an employer.[6]

Even if, as Sefiane suggests, the amended Act should be retroactively applied to this case, I find that RSA § 281-A:8 would continue to bar Sefiane's common law claims. The 2001 amendments, which became effective on August 10, 2001, now exclude from the definition of "personal injury" a "mental injury if it results from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or any similar action, taken in good faith by an employer." RSA § 281-A:2, XI. (Supp. 2001). Accordingly, the amended Act erects no bar to emotional distress claims resulting from any of these acts, as long as the act was taken by the employer in good faith. As set forth in the complaint, however, Sefiane's emotional distress claims stem not from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or similar action by Wal-Mart, but instead arise as a result of Whitney's allegedly harassing

---

[6]Although Martin was decided earlier this month, it did not consider the effect that the 2001 amendments to the Act may have had on the viability of personal injury claims, including emotional distress claims, against an employer. See Martin, 2002 WL 398473 *2 (considering the impact of RSA § 281-A:8, as it appeared in 1998, on plaintiff's emotional distress claims).

19

conduct.

Similarly, the recent amendments to RSA § 281-A:8 provide no support for Sefiane's assertion that his common law claims should survive summary judgment. As amended, RSA § 281-A:8 states that "[n]othing in this chapter shall derogate from any rights a former employee may have under common law or other statute to recover damages for wrongful termination of, or constructive discharge from, employment." Again, Sefiane's complaint indicates that plaintiff's common law claims arose not as a result of a wrongful termination or constructive discharge, but as a result of the alleged harassment that occurred from July to October 1999. Moreover, even if, as Sefiane suggests, the emotional distress and negligent supervision claims were part and parcel of his constructive discharge claim, Sefiane's failure to introduce sufficient evidence to support his constructive discharge claim would defeat those claims. I recommend, therefore, that Wal-Mart's motion for summary judgment be granted with respect to the state common law claims set forth in Counts II through IV of the complaint.

<u>Conclusion</u>

For the foregoing reasons, I recommend that the defendant's

20

motion for summary judgment (document no. 19) be granted in part and denied in part.  Specifically, I recommend that the motion be granted with respect to the plaintiff's constructive discharge claim under Title VII and with respect to the plaintiff's state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress and negligent supervision.  I further recommend that the court otherwise deny the defendant's motion.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: March 27, 2002

cc:   E. Tupper Kinder, Esq.
      Paul R. Cox, Esq.

21