**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.1.0**

# United States Court of Appeals
## For the First Circuit

No. 05-2605

AIDA D. RIVERA-MARTINEZ, et al.,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF PUERTO RICO, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge]

Before

Selya, Circuit Judge,
Siler,* Senior Circuit Judge,
and Howard, Circuit Judge.

Rafael A. Oliveras Lopez de Victoria, for appellants.
Irene S. Soroeta-Kodesh, Assistant Solicitor General with whom
Salvador J. Antonetti-Stutts, Solicitor General, and Mariana D.
Negron-Vargas, Deputy Solicitor General, and Maite D. Oronoz-
Rodriguez, Deputy Solicitor General, were on brief, for appellees.

January 4, 2007

---

*Of the Sixth Circuit, sitting by designation.

**SILER**, <u>Senior Circuit Judge</u>.  Plaintiff Aida D. Rivera-Martinez appeals the dismissal of her hostile work environment and retaliatory harassment claims against the Puerto Rico Treasury Department and the Commonwealth of Puerto Rico ("Defendants"). Rivera-Martinez contends that while working in the Human Relations Department of the Treasury Department ("Treasury Department"), specifically in the Training Center, she was subjected to sexual harassment by her supervisor, Eduardo Rivera-Marrero.  She claims that Rivera-Marrero's conduct created a hostile work environment and that Defendants retaliated against her by tolerating harassment by an employee.  Rivera-Martinez seeks relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), as well as Art. I, Sec. II of the Puerto Rico Constitution for breach of her human dignity protection.  The district court dismissed her Title VII claims and dismissed without prejudice her state law claim.  For the following reasons, we AFFIRM.

## I.

Rivera-Martinez's claims derive primarily from two specific incidents.  First, she claims that in June 2001, she was "sexually touched in her left forearm" by her supervisor, Rivera-Marrero.  According to Rivera-Martinez, Rivera-Marrero "gently caressed her forearm in an up and down motion," and in response to

this touching, Rivera-Martinez pulled away and angrily declared, "Do not touch me any more."

The second incident took place on September 20, 2002, when Rivera-Martinez and Delia Zayas were called to a meeting in Rivera-Marrero's office. In that meeting, Rivera-Marrero allegedly chided Rivera-Martinez for violations of several office procedures and improper office behavior. Rivera-Martinez denied wrongdoing and countered by pointing out irregularities she had observed in office procedure and conduct. Suddenly, according to Rivera-Martinez, Rivera-Marrero walked over to Rivera-Martinez and grabbed her. "[H]e began to twist her torso by placing one hand [on] her back and the [other hand on] her upper torso [on] the brassiere area." Rivera-Martinez claims that Rivera-Marrero's hand touched her hip and buttocks and that Rivera-Marrero "used his hip and pubic area" to push her out of the office. Zayas did confirm that Rivera-Marrero touched Rivera-Martinez on the arm and on her mid back "where the bra is," but stated that she believed that Marrero would have behaved the same way with either a male or female employee.

On September 23, 2002, Rivera-Martinez wrote a letter to the Secretary of the Treasury Department describing the September 20 meeting and requesting an immediate solution. Rivera-Martinez claimed that "abuse and negligence has been and is being committed against me" but she did not describe Rivera-Marrero's conduct as

sexual harassment. The Treasury Department investigated and concluded that no assault had occurred. Rivera-Martinez filed an administrative complaint with the Equal Employment Opportunity Commission on March 17, 2003, claiming that she had been sexually harassed.

Rivera-Martinez also asserts that Rivera-Marrero sexually harassed other Treasury Department employees. She describes several occasions where Rivera-Marrero allegedly abused co-workers Lilliam Rolon and Sandra Ostolaza.

The district court concluded that Rivera-Martinez did not present sufficient evidence that the harassment was based on gender and that the two incidents alleged by Rivera-Martinez did not meet the degree of severity and pervasiveness required to support an actionable hostile work environment claim. The lower court granted Defendants' motion for summary judgment, and having dismissed the federal-based cause of action, the court dismissed without prejudice the remaining state law claim.

**II.**

We review summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in the nonmovant's favor. Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003).

We begin by addressing Rivera-Martinez's hostile work environment claim. Rivera-Martinez challenges the district court's

-4-

finding that she failed to show that the harassment was based on gender. She also asserts that her evidence of harassment demonstrates severity and pervasiveness sufficient to alter the conditions of her employment.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The scope of Title VII covers more than "economic" or "tangible" discrimination. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)). Title VII prohibits sexual harassment so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment." Meritor, 477 U.S. at 67.

To succeed on her hostile work environment claim, Rivera-Martinez must establish the following:

> (1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-89 (1998); Harris, 510 U.S. at 20-23; and Meritor, 477 U.S. at 65-73). The focus of hostile work environment cases is generally on elements (4) and (5). Id.

As the Supreme Court noted in Harris, the test for proving a hostile work environment "is not, and by its nature cannot be, . . . mathematically precise." Harris, 510 U.S. at 22. To determine whether an environment is sufficiently "hostile" or "abusive," a court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not amount to a hostile work environment. Faragher, 524 U.S. at 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998)). Title VII was not intended to be a "general civility code"; therefore, conduct must be extreme to be actionable. Id.

In the case at hand, the district court found that Rivera-Martinez failed to demonstrate that the alleged harassment was because of her gender. We agree. Rivera-Martinez provides very little context for the first incident. She merely states that

she was "sexually touched" on the forearm.  In the second incident, assuming the plaintiff's version of the facts, Rivera-Marrero grabbed her back and shoulder, touched her hip, buttocks, and brassiere area, and pushed her out of his office.  This episode occurred following a heated exchange between the two and happened in the presence of another employee.  There is no indication that Rivera-Marrero's behavior, while inappropriate, was sexual in nature.  Rather, his conduct appears to be the product of his anger toward Rivera-Martinez for challenging him and pointing out various problems within the office.

However, discriminatory harassment does not have to be overtly sex-specific in content to be actionable under Title VII. "Harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." Oncale, 523 U.S. at 80.  The Oncale court emphasized, "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. (quoting Harris, 510 U.S. at 25 (Ginsburg, J., concurring)).  In this case, although Rivera-Martinez offers evidence that other female employees were mistreated by Rivera-Marrero, she does not assert that women in the office were treated differently than male workers.  Another Treasury Department employee, Zayas, stated, "I don't see that [Rivera-Marrero] establishes, in general terms, a

big difference when dealing with any male or any . . . female. Basically he's equally authoritative one way or the other."

Even if the harassment is assumed to be because of her gender, Rivera-Martinez still fails to show that it was severe or pervasive. Applying the factors cited in Harris to determine what creates an "abusive" or "hostile" environment, Rivera-Martinez's claim falls short. The harassment Rivera-Martinez alleges was infrequent; she cites only two incidents that are over a year apart. Although an isolated event may create a hostile work environment, it must be "extremely serious." Faragher, 524 U.S. at 788. The inappropriate behavior here does involve unwanted physical touching, but both incidents were relatively limited. At worst, Rivera-Martinez was on one occasion inappropriately touched on her arm and in another instance hastily pushed out of an office. See, e.g., Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990) (concluding that conduct was not sufficiently severe or pervasive where a coworker stood behind the plaintiff so as to purposefully bump into him and "peeped" at plaintiff's genitals while standing next to him in the restroom); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) (holding that "a single battery coupled with two merely offensive remarks over a six month period" does not create a hostile work environment); Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 528-35 (7th Cir. 1993) (finding two incidents of unwanted sexual advances did not constitute severe

harassment where the supervisor "placed his hand on [the plaintiff's] leg above the knee several times," "rubbed his hand along her upper thigh," "kissed her for two to three seconds until she pushed him away," and then, three weeks later, attempted to grab her). Furthermore, Rivera-Martinez never claims that the harassment had a negative impact on her work performance. See Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46 (affirming summary judgment in favor of an employer in a hostile environment case where the conduct "was never . . . an impediment to [the plaintiff's] work performance").

Rivera-Martinez may have experienced discomfort as a result of the Rivera-Marrero's behavior, but she has not presented adequate evidence of harassment to allow a reasonable jury to find that she was subjected to a hostile work environment.

Rivera-Martinez also claims that she suffered retaliation by the Treasury Department following her September 23, 2002, letter to the Secretary of the Treasury. To state a *prima facie* case of retaliation, a plaintiff must prove that "(1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002) (citing Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)).

Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. at 23 (quoting White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 262 (1st Cir. 2000)). For a plaintiff to prove retaliation based on an employer's toleration of harassment, she must show that the employer tolerated severe or pervasive harassment motivated by the plaintiff's protected conduct. Id. at 26.

It is undisputed that Rivera-Martinez engaged in protected conduct when she wrote the letter describing the incident that occurred on September 20, 2002. However, she fails to present evidence that she suffered an adverse employment action. She does not allege that she was demoted, transferred, refused a promotion, or given a negative job evaluation. Her claim rests on the Treasury Department's toleration of harassment by other employees. For her claim to be viable, she must provide evidence of severe or pervasive harassment subsequent to her protected conduct. Yet, Rivera-Martinez fails to allege any incident of retaliatory harassment following her report of the September 20, 2002, meeting. She maintains that she had to continue working with Rivera-Marrero and insists that being supervised by him "created a very hostile atmosphere," but she never asserts any further harassing events.

Therefore, summary judgment is appropriate on the retaliation claim.

The district court properly dismissed without prejudice Rivera-Martinez's state law claims. Under 28 U.S.C. § 1367, a "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." Appellate review of the refusal to exercise supplemental jurisdiction is for abuse of discretion. Gonzalez-de-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004). In this case, the district court dismissed the Title VII federal claim and therefore, in its discretion, declined to entertain the supplemental state law claim. No abuse of discretion occurred. Rivera-Martinez may file her unadjudicated state claims before the courts of the Commonwealth of Puerto Rico.

**III.**

For the foregoing reasons, we affirm the district court's order granting summary judgment to Defendants.

**Affirmed**.