ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARMEN YOMARA VILLORIA BARRIOS<br><br>Apelante<br><br>v.<br><br>ALPINE HEALTH TECHNOLOGIES CORPORATION<br><br>Apelado | KLAN202500298 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2023CV07873<br><br>Sobre: Despido Injustificado |
|---|---|---|

Panel integrado por su presidenta, la Juez Grana Martínez[1], el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2025.

Este Recurso de *Apelación* fue presentado por la señora Carmen Yomaria Villoria Barrios (en adelante, Apelante) el 8 de abril de 2025. Los apelados son: Alpine Health Technologies Corporation y Otros, en adelante (los apelados). La Apelante nos solicita que revisemos la *Sentencia Sumaria* emitida el 31 de marzo de 2025, y notificada el 1 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicha Sentencia Sumaria, el TPI concluyó que no existía controversia real ni sustancial en el caso de epígrafe, y lo desestimó en contra de la Apelante.

Examinado el recurso de apelación, así como el derecho aplicable, determinamos *confirmar* el dictamen impugnado.

---

[1] De conformidad a la Orden Administrativa Núm. OATA-2025-081 del 15 de mayo de 2025, y debido a la inhibición de la Hon. Ivelisse M. Domínguez Irizarry, se designó a la Hon. Grace M. Grana Martínez, en su sustitución, para entender y votar en el presente recurso.

A continuación, esbozamos una relación de los hechos procesales relevantes, seguido del marco doctrinal pertinente, que sostiene nuestra decisión.

## I.

El 17 de agosto de 2023, la apelante presentó ante el TPI una *Querella* sobre Despido Injustificado al amparo de la Ley Num. 2 de 17 octubre de 1961, 32 LPRA sec. 3118, *et seq.*[2] (Ley Núm. 2-1961), la cual dispone el procedimiento especial de carácter sumario para su tramitación.

Las alegaciones de la *Querella* indican que la aquí apelante fue discriminada laboralmente por la parte apelada. Específicamente, alegó que llevaba trabajando para la parte apelada desde el 4 de mayo de 2015 hasta el 8 de diciembre de 2022 y que durante ese periodo no recibió una evaluación negativa de parte de sus supervisores. Alegó que desde el comienzo de sus labores no le aumentaron el sueldo. Sin embargo, añadió que, a otros empleados contratados posteriormente a ella, le asignaron un sueldo que ascendía a noventa mil dólares ($90,000.00) anuales.

Por otra parte, la apelante indicó en sus alegaciones que desde el año 2018 le indicó a la parte apelada su interés en ser supervisora del Departamento de Manejo de Proyectos. No obstante, según sus alegaciones, nunca recibió una respuesta sobre dicho reclamo y posteriormente la vacante fue cubierta el 20 de septiembre de 2021 por otra empleada, quien sería su supervisora.

Ulteriormente, el 28 de septiembre de 2021, la apelante alegó que su nueva supervisora la citó a una reunión y que a partir

---

[2] Apéndice pág. 1.

de ese momento comenzó a tratarla de manera hostil y prepotente. A consecuencia de esto, la apelante reportó las actitudes de su supervisora ante el Departamento de Recursos Humanos de la parte apelada. Sin embargo, la apelante planteó que a consecuencia de este reporte, su supervisora comenzó con un alegado patrono de hostilidad en contra de ella.

Indicó la apelante en su querella que el 6 de octubre de 2021, recibió por primera vez una amonestación por no haber estado presente en una reunión que se celebró virtualmente, cuando se le requería presentarse a las reuniones que fueran de manera presencial.

El 19 de octubre de 2021 la apelante acudió ante la Unidad Antidiscrimen del Estado Libre Asociado de Puerto Rico, del Departamento de Trabajo y Recursos Humanos, para realizar una querella en contra de su supervisora por el acoso que alegadamente recibía.

Por otro lado, el 25 de octubre de 2021 la apelante solicitó por escrito un acomodo razonable y revisión salarial. Sin embargo, ante dicho reclamo la apelante adujo que la parte apelada hizo caso omiso.

Aseveró en su demanda que, el 19 de noviembre de 2021, le removieron todos los proyectos que tenía asignados sin explicación alguna. Por estas actuaciones, la apelante tuvo que acudir a buscar ayuda emocional y reportar lo sucedido ante el Fondo del Seguro del Estado.

Luego de varios asuntos acontecidos, la apelante arguyó que, debido a los acosos continuos y represalias por parte de los supervisores de la parte apelada, su salud emocional y mental se vio afectada por lo cual tomó la decisión de renunciar el 8 de diciembre de 2022.

Por tal razón, en su petitorio la apelante solicitó una mesada ascendente a $23,663.43, el pago por la cantidad de $49,326.86 de la doble compensación por las represalias y una cantidad no menor de $18,500.00 en concepto de honorarios de abogado.

El 31 de agosto de 2023, la parte apelada presentó *Contestación a Querella*.[3] En el pliego, negó las alegaciones incoadas por la apelante, indicó que la apelante había renunciado libre y voluntariamente, por lo cual, solicitó la desestimación de la querella.

Así las cosas, y tras varias incidencias procesales, la parte apelada presentó el 27 de marzo de 2024 una *Moción de Sentencia Sumaria*.[4] En la misma reclamó al menos veinte (20) hechos incontrovertidos. En lo atinente, sostuvo que, la apelante no contaba con evidencia que sustentara de alguna manera que su caso era de despido constructivo. Igualmente, la parte apelada adujo que la apelante no podía probar que fue víctima de represalias, ni de acción arbitraria o caprichosa por parte del patrono apelado, debido a que su renuncia fue libre y voluntaria. También adujo que de las veinte y cinco (25) alegaciones presentadas en la querella, diecisiete (17) fueron adjudicadas en un caso previo. Por lo cual, solicitó al TPI que dictara sentencia sumaria desestimando con perjuicio la *Querella* de epígrafe en su totalidad.

Surge de los hechos presentados, que el 2 de abril de 2024 el TPI ordenó a la parte apelante a presentar su *Oposición* a la *Moción de Sentencia Sumaria*, luego de que se tomara la deposición del Sr. Néstor Centeno quien era el Vicepresidente de Alpine Health Technologies Corporation.

---

[3] Apéndice pág. 8.
[4] Apéndice pág. 47.

En cumplimiento de orden, el 17 de junio de 2024, la apelante presentó una *Oposición a Moción de Sentencia Sumaria*.[5] En esta, la apelante arguyó que existían controversias esenciales del caso presentado y que por tanto la solicitud de sentencia sumaria era improcedente en derecho. Además, la apelante indicó que tenía derecho a tener un juicio para presentar su testimonio y evidencia documentada para sostener su solicitud de la mesada por haber renunciado constructivamente y solicitar daños por represalias.

Posteriormente, la parte apelada presentó el 26 de junio de 2024, *Réplica a "Oposición a Moción de Sentencia Sumaria"*.[6] En respuesta la apelante presentó el 4 de julio de 2024, *Dúplica a Réplica a Oposición a Moción de Sentencia Sumaria*.[7]

Tras ello, el 31 de marzo de 2025, el Tribunal dictó la *Sentencia Sumaria* a favor de la parte apelada y por consiguiente la demanda quedó desestimada.[8] El foro primario no detalló las determinaciones de hechos. Sin embargo, el TPI aclaró que se daban por admitidas los siguientes hechos incontrovertidos por no haber sido consideradas en el caso previo:

> 10. El 22 de noviembre de 2022 la Sra. Villoria faltó a un adiestramiento que le había sido asignado, por razón de una cita médica urgente.
> 11. El 28 de noviembre de 2022, se le solicitó nuevamente a la Sra. Villoria asistir a un adiestramiento en Alpine, al cual se negó a participar por entender que ya había tomado el mismo.
> 12. El 29 de noviembre de 2022, se le solicitó a la Sra. Villoria participar de un adiestramiento, y una vez más se negó a seguir las instrucciones porque ya lo había tomado.

---

[5] Apéndice pág. 104.
[6] SUMAC, entrada Núm. 27.
[7] SUMAC, entrada Núm. 28.
[8] Apéndice pág. 1062.

13. La Sra. Villoria no tiene evidencia para establecer que el adiestramiento asignado es igual a uno que tomó en el año 2020.

14. Del 28 de noviembre al 8 de diciembre de 2022 la Sra. Villoria no recibió ningún otro señalamiento disciplinario ni alguna amonestación.

15. Del 28 de noviembre de 2022 al 8 de diciembre de 2022 la Sra. Villoria tampoco tuvo ninguna discusión o desavenencia con personal de Alpine.

16. Previo a su renuncia, nadie le impidió a la Sra. Villoria trabajar en Alpine.

17. La Sra. Villoria decidió renunciar porque así le fue recomendado por su psicóloga para su salud emocional.

18. Tras recibir mediante correo electrónico la carta de renuncia de la Sra. Villoria, Alpine aceptó la misma.

19. El 27 de enero de 2023, la Corporación del Fondo del Seguro del Estado determinó que no existía nexo causal entre el empleo de la querellante y su condición mental, razón por la cual procedió a cerrar y archivar su caso.

20. La Sra. Villoria no apeló la decisión del Corporación del Fondo del Seguro del Estado, por lo que es final y firme.

En desacuerdo, el 8 de abril de 2025, la apelante interpuso el presente recurso de apelación. En este formula los siguientes señalamientos de error:

**Primero:** Erró el TPI al desestimar la querella de despido injustificado/renuncia constructiva aplicando las doctrinas de cosa juzgada y/o impedimento colateral por sentencia sin realizar el análisis jurídico requerido conforme a derecho.

**Segundo:** Erró el TPI al no considerar que la causa de acción por despido injustificado/renuncia constructiva es distinta a las causas de acción adjudicadas en el caso previo SJ2022CV00487.

**Tercero:** Erró el TPI al desestimar sumariamente la querella basándose en un caso previo que aún se encuentra bajo revisión apelativa, lo que impide que la sentencia sea final y firme para efectos de la aplicación de la doctrina de cosa juzgada.

**Cuarto:** Erró el TPI al no considerar los hechos ocurridos con posterioridad a la presentación del caso previo, los cuales fueron determinantes para la renuncia constructiva de la apelante.

**Quinto:** Erró el TPI al aplicar inflexiblemente las doctrinas de cosa juzgada y/o impedimento

colateral por sentencia derrotando los fines de la justicia y las consideraciones de orden público.

**Sexto:** Erró el TPI al desestimar una querella presentada bajo el procedimiento sumario de la **Ley Núm. 2** por fundamentos de economía procesal, contraviniendo la política pública laboral y la naturaleza expedita y especial de este tipo de reclamaciones.

La parte apelada presentó el 6 de mayo de 2025*, Alegato de la Parte Apelada y Solicitud de Desestimación por Falta de Perfeccionamiento, a Tenor con la Regla 16 (E).* Con el beneficio de ambos escritos, disponemos.

## II.

## A.

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA Ap. V, R. 36.3(e); Consejo Tit. v. Rocca Dev. Corp., et al, 2025 TSPR 6, 215 DPR ___ (2025); BPPR v. Cable Media, 2025 TSPR 1, 215 DPR ___ (2025); BPPR v. Zorrilla y otro, 2024 TSPR 62, 214 DPR ___ (2024); Cruz López v. Casa Bella y otros, 213 DPR 980, 993 (2024); Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

Para que proceda este mecanismo es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Consejo Tit. v. Rocca Dev. Corp., et al, supra; Soto y otros v. Sky Caterers, 2025 TSPR 3, 215 DPR ___ (2025); Universal Ins. Y otro v. ELA y otros, 211 DPR 455, 471 (2023); Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Un hecho material es aquel que puede

afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Ins. Y otro v. ELA y otros, *supra,* pág. 472; Meléndez González et al. v M. Cuebas, 193 DPR 100, 110 (2015); Ramos Pérez v. Univisión, *supra*, pág. 213.

La parte que se oponga a que se dicte sentencia sumaria, deberá controvertir la prueba presentada por la parte que la solicita. Regla 36.3(b) de Procedimiento Civil, *supra.* La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. BPPR v. Cable Media, supra; Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e). Al dictar sentencia sumaria el tribunal deberá analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011). De no haber hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en derecho. Cruz, López v. Casa Bella y otros*, supra*, pág. 993.

Se ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Consejo Tit. v. Rocca Dev. Corp., et al, supra; Soto y otros v. Sky Caterers, *supra*; BPPR v. Cable Media, supra; BPPR v. Zorrilla y otro, *supra*; Meléndez González et al. v. M. Cuebas, *supra*, pág. 118; Vera v. Dr. Bravo, 161 DPR 308, 334 (2004). A tenor con lo anterior, al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria, como foro intermedio podemos:

(1) considerar los documentos que se presentaron ante el foro primario, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Consejo de Tit. v. Rocca Dev. Corp., et al, supra; Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964, 981 (2022); Meléndez González et al. v. M. Cuebas, *supra*, pág. 114.

**B.**

La Ley Núm. 2-1961, *supra*, "provee un mecanismo sumario para la tramitación y adjudicación de pleitos laborales". Collazo Muñiz v. Aliss, 2025 TSPR 22, 215 DPR ___ (2025); Class Fernández v. Metro Health Care, 2024 TSPR 63, 213 DPR ___ (2024); Patiño Chirino v. Parador Villa Antonio, 196 DPR 439, 446 (2016). Esta legislación promulga un procedimiento sumario en los casos que versen sobre reclamaciones de una persona obrera o empleada en contra de su patrono, referentes a cualquier derecho o beneficio por concepto de compensación por trabajo o labor realizados o en ocasión a un despido de su empleo sin justa causa, todo en aras de agilizar los trámites pertinentes a las mismas, de manera que resulte en un proceso menos oneroso para la persona trabajadora. 32 LPRA sec. 3118; Collazo Muñiz v. Aliss, *supra*; Peña Lacern v. Martínez Hernández *et al.*, 210 DPR 425, 434 (2022); León Torres v. Rivera Lebrón, 204 DPR 20, 30 (2020); Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 265 (2018). La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. Patiño Chirino v. Parador Villa Antonio, *supra,* pág. 446; Izagas Santos v. Family Drug Center, 182 DPR 463, 480

(2011). Con ese propósito, se alteraron ciertos términos y condiciones provistas en nuestro ordenamiento procesal, las cuales rigen de ordinario la litigación civil. León Torres v. Rivera Lebrón, *supra*, pág. 31. En función del interés protegido por esta legislación social, consistentemente se ha destacado la importancia de asegurar que los trámites judiciales encaminados bajo el palio de la Ley Núm. 2, no pierdan su esencia expedita. León Torres v. Rivera Lebrón, *supra,* pág. 33.

## C.

La Ley 80 de 30 de mayo del 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, conocida como la *Ley de Indemnización por Despido Injustificado* ("Ley 80"), provee un remedio para empleados, contratados por tiempo indeterminado, que sean despedidos sin justa causa. Ruiz Mattei v. Commercial Equipment, 2024 TSPR 68, 213 DPR ___ (2024); Indulac v. Unión, 207 DPR 279, 298 (2021); López Fantauzzi v. 100% Natural*,* 181 DPR 92, 107 (2011); Díaz v. Wyndham Hotel Corp*.*, 155 DPR 364, 375 (2001). Éstos podrán reclamar a su patrono, además del sueldo devengado, una indemnización que será calculada usando la fórmula dispuesta en la referida ley. 29 LPRA sec. 185a. Sin embargo, un patrono puede despedir a su empleado, sin sanción alguna, si este demuestra la existencia de una justa causa para ello. Romero et als. v. Cabrer Roig et als., 191 DPR 643, 651 (2014). El Artículo 2 de la Ley 80, *supra*, enumera, de modo no taxativo, aquellas circunstancias que constituyen justa causa para el despido. 29 LPRA sec. 185b.

Bajo la Ley 80, *supra*, el empleado tiene que demostrar que cumple con los requisitos de la causa de acción: que fue empleado de un comercio, industria u otro negocio; que su contrato era por

tiempo indeterminado; que recibía remuneración por su trabajo; y que fue despedido de su puesto. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 907 (2011).

Por otro lado, el despido constructivo o tácito se define como "la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra". 29 LPRA sec. 185e; véase, además, Rivera Figueroa v. The Fuller Brush Co., supra, pág. 907.

Por tanto, existe un despido constructivo cuando los actos voluntarios e injustificados de un patrono tienen el propósito de obligar a un empleado a dejar su cargo siendo esta la única alternativa razonable que le queda al empleado. Rivera Figueroa v. The Fuller Brush Co., supra, pág. 908; S.L.G. Hernández-Beltrán v. TOLIC, 151 DPR 754, 777 (2000); Vélez de Reilova v. Ramírez Palmer Bros. Inc., 94 DPR 175, 178 (1967). La adjudicación de esta causa de acción requiere que la conducta del patrono y su efecto sobre el empleado se examinen sobre la base del estándar de una persona razonable ante las circunstancias similares y no sobre la percepción subjetiva del propio empleado. Rivera Figueroa v. The Fuller Brush Co., supra, pág. 908. Así pues, no basta que el empleado sufra cualquier molestia o condición antipática en el empleo; además, si se trata de vejámenes y humillaciones, éstos deben ser de magnitud sustancial. Íd.

Para prevalecer, corresponde al empleado probar la conducta específica del patrono dirigida a obligarlo a renunciar. Específicamente, el empleado debe demostrar que "la renuncia

fue la única alternativa razonable que tenía ante las condiciones de trabajo onerosas que le impuso su patrono con el propósito de inducir o forzar su renuncia". Rivera Figueroa v. The Fuller Brush Co., *supra,* págs. 917-918. Es decir, no basta con una mera alegación de que la renuncia fue un despido constructivo. *Íd*., a la pág. 909. El empleado tiene que demostrar el hecho base del despido, ya sea directo o en su modalidad constructiva o tácita. *Íd*.

Por otro lado, la Sección 9.2 de las Guías para la Interpretación de Legislación Laboral de Puerto Rico, dispone, en lo pertinente, que el empleado tiene que establecer la irrazonabilidad de la acción patronal que lo llevó a renunciar. Es decir, "no se trata de meras alegaciones, pues el empleado que alegue que fue obligado a renunciar deberá probar mediante preponderancia de la evidencia, que el patrono no estaba realizando acciones legítimas y que la razón real para la toma de las acciones fue provocar maliciosamente un ambiente inhóspito para el empleado [...]. Por otro lado, [...] meros cambios de funciones, de lugar de trabajo o reducciones salariales superficiales, sin más, no constituyen acciones dirigidas a provocar la renuncia de un empleado. Es decir, el simple hecho de que una decisión patronal resulte en inconvenientes personales no torna la acción patronal, que de ordinario es legítima, en un subterfugio para forzar una renuncia. El valor protegido del precepto es evitar que los patronos se liberen de la responsabilidad que les confiere la Ley Núm. 80, a través de artificios, pero reconoce expresamente que el patrono está facultado para tomar aquellas decisiones que de ordinario pueden considerarse antipáticas." Departamento del Trabajo y Recursos

Humanos, *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, págs. 124-125, (1ra ed.2019).

En la Jurisdicción federal para propósitos de la 42 U.S.C.A. sec. 2000e–3(a) se ha reconocido en la jurisprudencia la figura del despido constructivo en represalia (*retaliatory constructive discharge*). Bajo el esquema de la 42 U.S.C.A. sec. 2000e–3(a) un despido puede ser tanto uno directo como constructivo. *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998); Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997).

Así las cosas, para probar un despido constructivo en represalia requiere que el promovente establezca que el ambiente de trabajo era hostil. *Hernandez-Torres v. Intercontinental Trading, Inc., supra.* Tal determinación utiliza el antes mencionado criterio objetivo. Dicho de otra forma, si las condiciones de trabajo impuestas, en represalia, por el patrono son de tal grado que una persona razonable se sentirá forzada a renunciar. *Alvarado v. Donahoe*, 687 F.3d 453, 465 (1st Cir. 2012).

**D.**

Por último, la doctrina de cosa juzgada requiere que entre el caso resuelto mediante sentencia y el caso en que se invoca la misma concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. Landrau Cabezudo y otros v. La Autoridad, 2025 TSPR 7, 215 DPR __ (2025); Fonseca et al. v. Hosp. HIMA, 184 DPR 281, 294 (2012); Méndez v. Fundación, 165 DPR 253, 267 (2005); Pagán Hernández v. U.P.R., 107 DPR 720, 732 (1978). De modo que, la doctrina de cosa juzgada impide que, luego de emitida una

sentencia en un pleito anterior, las mismas partes religuen en un pleito posterior las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que pudieron haber litigado. Landrau Cabezudo y otros v. La Autoridad, *supra*; Fonseca et al. v. Hosp. HIMA, *supra,* pág. 294; Mun. de San Juan v. Bosque Real, S.E., 158 DPR 743, *supra,* pág. 769; Acevedo Santiago v. Western Digital, 140 DPR 452, 464 (1996).

Aun estando presentes los componentes necesarios para que la doctrina de cosa juzgada surta efecto, la referida figura legal no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso. Beníquez et al. v. Vargas 184 DPR 210, 224 (2012). "[L]a sentencia anterior es concluyente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser pero que no fueron litigadas y adjudicadas en la acción anterior." Beníquez et al. v. Vargas*, supra*, págs. 225-226*.*

Tampoco, la doctrina de cosa juzgada, se aplica de forma automática. S.L.G. Szendrey-Ramos v. Consejo Titulares, supra, pág. 154 (2011). No se aplicará inflexiblemente cuando con ello se derroten "los fines de la justicia o las consideraciones de orden público." Ortiz Matías et al. v. Mora Development, 187 DPR 649, 655 (2013); Fonseca et al. v. Hosp. HIMA, *supra*, pág. 294.

### III.

En el presente caso, la parte apelante en esencia plantea que el TPI erró en desestimar el caso de epígrafe bajo el fundamento de cosa juzgada por haberse presentado previamente

un caso entre las partes. A su juicio, existen hechos posteriores que fueron determinantes para que la apelante presentara su renuncia constructiva. Además, aduce que el tribunal primario erró en desestimar sumariamente el caso presentado bajo el fundamento de cosa juzgada por elementos de un caso que aún se encuentra en revisión del tribunal apelativo.[9]

Examinados los planteamientos esbozados, adoptamos como correctas las determinaciones de hechos que no están en controversia, así determinadas por el tribunal primario. Al tratarse de una solicitud de Sentencia Sumaria, el foro primario correctamente emite una Sentencia en la que desestima la causa de acción de epígrafe.

A nuestro juicio, no es correcto lo que plantea la apelante de que no procede la desestimación en la totalidad de su reclamación. Los hechos que están ante nuestra consideración surgen de deposiciones y varios documentos que fueron presentados al Tribunal Primario.

En particular, surge que la apelante presentó su renuncia el 8 de diciembre de 2022 a la compañía Alpine Health Technologies Corporation por haber sufrido daños emocionales. Por estos hechos, la apelante demanda a la parte apelada reclamando una mesada y doble compensación por las supuestas represalias sufridas por parte de su patrono. No obstante, estos hechos por si solos no establecen los elementos necesarios para que se contemple un despido constructivo.

De las propias alegaciones de la apelante en su deposición surge que su renuncia no fue forzada por su patrono. La apelante también esboza en su petitorio que meses antes de su renuncia

---

[9] KLAN202500236.

su patrono dejó de asignarle proyectos relacionados a su trabajo y que solamente se le asignaban trabajos administrativos. Por estas razones, la apelante arguye que sufrió daños emocionales y que su ambiente laboral se tornaba como uno hostil. Los reclamos realizados por la apelante no se sustentan en hechos válidos y concretos para poder adjudicar sobre ello.

Tal cual esbozado en Rivera Figueroa v. The Fuller Brush Co., *supra*, se dan los elementos del despido constructivo cuando existen actos voluntarios e injustificados del patrono que obliguen a un empleado a dejar su cargo.  En el caso de autos, la apelante alega una serie de eventos que la obligan a renunciar. Sin embargo, de la prueba documental presentada, la apelante no nos pone en posición para confirmar que su renuncia fue producto de un despido constructivo. Si bien es cierto que la apelante arguye haber sufrido daños emocionales, de sus propias alegaciones realizadas en la deposición, la apelante no admite que dichos daños fueron causados por el patrono y tampoco arguye que su renuncia fue por situaciones específicas ocasionadas por su patrono.

La prueba documental presentada narra unos eventos y alegaciones que nos permite determinar que los hechos presentados no están en controversia, tal cual lo hizo el foro primario. Adicional a todo lo mencionado anteriormente, la apelante había presentado un caso previo con algunos de los mismos hechos planteados en la controversia que tenemos ante nuestra consideración. Por lo cual, el foro apelativo decidió admitir las alegaciones de la diez (10) a la veinte (20) porque no fueron consideradas en el caso previo. Sobre este particular, entendemos que el foro primario no puede entrar en los méritos sobre hechos

presentados en un caso previo y que están ante la consideración de otro foro.

Un examen de novo de los escritos que incitan a la Sentencia sumaria y su correspondiente oposición, así como de la evidencia presentada por las partes, nos conduce a confirmar el dictamen emitido por el TPI apelado.

**IV.**

Por los fundamentos expuestos, **CONFIRMAMOS** la *Sentencia* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. La Juez Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones